POWELL *v.* POWELL.

No. 14652.   OCTOBER 8, 1943.

*H. G. Bell* and *A. B. Conger,* for plaintiff.
*M. E. O'Neal* and *Vance Custer,* for defendant.

WYATT, Justice. The question in this case is the validity of an order of the trial judge awarding to the defendant wife temporary alimony and attorneys' fee. R. F. Powell filed against his wife, Josephine Grimes Powell, a petition for divorce, which the wife answered, denying the husband's right to divorce, and pleading facts on which she based her prayer for permanent alimony and attorneys' fees. Subsequently she filed her application in said cause, praying for injunction, temporary alimony, counsel fees, and other equitable relief. To this application the plaintiff interposed a demurrer which was overruled, and he excepted pendente lite. The pleadings and the testimony delivered at the hearing on the rule for temporary alimony and counsel fees referred generally to the treatment accorded by the parties each to the other, and the annual earnings and financial worth of the husband. No effort will be made to detail all of the contentions made by the pleadings, or to set out all of the evidence; but reference will be made only to the portions thereof essential to a consideration of the question presented. The wife was forty-three years of age, the husband was about ten years older. They were married in 1917, lived in various sections of the country, and finally settled in Decatur County, where the plaintiff was engaged in the restaurant and liquor business. The defendant charged that the plaintiff had a fortune conservatively estimated at $200,000, and had an annual income of $50,000. The evidence disclosed that in 1942 his earnings amounted to $52,000 or $54,000. He denied his liability for alimony or attorneys' fees, contending that he and his wife voluntarily separated on November 23, 1940, had not lived together as husband and wife since that time, and that on that date they entered into a written separation agreement whereby his wife released him from all claims of every nature, including alimony and attorneys' fees. He introduced in evidence the agreement referred to. It was under seal, signed and dated by the parties on November 23, 1940, and provided as follows: "Witnesseth, that whereas the said Raymonde Powell, husband, and the said Jo Grimes Powell, wife, have agreed to a voluntary separation as man and wife, and are now living in a state of separation, it is hereby agreed between them that in order to make provision for the present and future support of the said Jo Grimes Powell, and in settlement of all claims for present and future support, temporary alimony, perma-

nent alimony, dower, year's support, and any and all other claims or demands the said Jo Grimes Powell may have against the said Raymonde Powell, or the estate of said Raymonde Powell in the event of his death, the said Raymonde Powell agrees to pay, and has paid concurrently with the execution of this agreement, the sum of seven thousand ($7000) dollars in cash to the said Jo Grimes Powell, and the said Jo Grimes Powell hereby accepts payment of the sum of $7000 in full settlement and satisfaction of any and all claims she may have against the said Raymonde Powell for present and future support, temporary alimony, permanent alimony, dower, year's support, and any and all other claims or demands she may have against the said Raymonde Powell, or the estate of the said Raymonde Powell; and the said Jo Grimes agrees that if at any time in the future she may bring suit for divorce, the said Raymonde Powell is hereby released from any claim for attorney's fees to which she may be entitled under the law. And the said Jo Grimes Powell hereby acknowledges payment in full of the said $7000, as herein set forth."

The wife contended, and produced evidence to the effect, that she and her husband, after the execution of the agreement above set out, lived separate and apart for about one year, but that she returned home in November, 1941, and she and her husband resumed cohabitation as husband and wife and made their home in the plaintiff's apartment, where they continued to live until January, 1943, when she went to Florida. Upon her return home on February 10, 1943, she was served with the divorce suit which had been filed on January 19, about the time of her departure for Florida. In addition to the oral evidence produced at the hearing, the parties entered into the following stipulation. "It is stipulated that while the foregoing is a summary of the evidence, sufficient, however, to present the issues, that the evidence submitted to the court was sufficient to authorize the allowance of alimony and attorneys' fees, unless, as plaintiff in error contends, the contract of November 23, 1940, between the parties precludes the wife from recovering under the facts and law, notwithstanding that after the separation, which occurred November 23, 1940, and the execution of the contract, which contract had been determined upon, the judge was authorized under the evidence to find that the parties became reconciled and lived together as man and wife from November 21, 1941, to the date of the filing of the action for divorce."

The judge awarded to the wife $1800 per annum as temporary alimony, and $2000 as attorneys' fee. The husband excepted, assigning error upon this order, and on the ruling excepted to pendente lite, as to temporary alimony and attorneys' fees.

■ Headnote 1 requires no comment.

■ It is conceded in the stipulation that the judge was authorized by the evidence to find that the parties, after the separation agreement, had become reconciled, had voluntarily resumed cohabitation as husband and wife, and had lived together as such from November 21, 1941, until January 19, 1943, that being the date of the last separation. Therefore the only question presented is whether the separation agreement was annuled and set aside by virtue of the acknowledged subsequent voluntary cohabitation of the husband and wife. If in these circumstances the agreement became null and void, the ruling of the judge should not be disturbed. Counsel for the plaintiff state in their brief that the application for alimony and attorneys' fees was tried and determined upon the theory that the contract of November 23, 1940, was annuled and set aside, under the Code, § 30-217. They concede the subsequent voluntary cohabitation and reconciliation; but they contend, (1) that such cohabitation did not destroy or annul the contract; (2) that it continued binding on the defendant, and precluded her as a matter of law from recovering temporary alimony or attorneys' fees. There can be no doubt that when an estranged husband and wife reconcile their differences and voluntarily resume cohabitation as husband and wife, they have by such acts restored their original marital status as fully as if the separation had not occurred, and with it they assume all the duties, obligations, and liabilities imposed by law incidental to the relation, including the husband's obligation to support and maintain his wife. The husband is the head of the family. Code, § 53-501. He is bound to support and maintain his wife. § 53-510. These rights and liabilities of the husband remain in effect during cohabitation of the husband and wife, and until there has been a separation and the husband is relieved in some manner provided by law, such as divorce, contract or deed of separation, or by decree of court. The Code, § 30-217, provides that "The subsequent voluntary cohabitation of the husband and wife shall annul and set aside all provision made, either by deed or decree, for permanent alimony. The

rights of children under any deed of separation or voluntary provision or decree for alimony shall not be affected." The plaintiff contends that this section does not apply to an executed separation agreement in which the husband secures his release from liability for permanent alimony in consideration of the payment of a sum of money, or other personalty, but applies only where permanent alimony has been decreed by a court, or provided for in a deed conveying land. It thus becomes necessary to determine the applicability of this provision of the Code to contracts settling permanent alimony otherwise than by deed or by decree. The plaintiff attempts to justify this contention by asserting that the word "deed" does not refer to a *contract* settling permanent alimony, but that in a strict sense it refers only to deeds conveying land. This Code section, along with other sections set out in chapter 30-2 of the present Code, first made its appearance in the Code of 1863, § 1698. In that Code, § 1694 (1933, § 30-211), it is stated that the husband, in case of voluntary separation or where the wife, against her will, shall either be abandoned or driven off by her husband, "may voluntarily, by deed, make adequate provision for the support and maintenance of his wife, consistent with his means and her former circumstances, which shall be a bar to her right to permanent alimony." The word "deed" as used in the section last referred to, and as used in § 30-217, certainly was intended to have the same meaning and import, since these sections were by the codifiers collected, framed, and placed in the Code at the same time.

While we have been unable to find where this court has ever defined the word "deed" as used in these sections, it has referred to "contracts" as provided by § 30-211. *Hayes* v. *Hayes*, 191 *Ga.* 237, 240 (11 S. E. 2d, 764). See *Watkins* v. *Watkins*, 64 *Ga. App.* 344, 347 (13 S. E. 2d, 100). Being called upon to give to it the narrow definition as pertaining only to conveyances of land, enlightenment may be had by reference to definitions that have been placed upon it in other adjudications. There is no statutory definition for it in this State. However, the requisites of "a deed to lands" have been defined (Code, § 29-101), thus indicating a recognition, as other courts have defined, that the word is one of wide application, and of definition other than a narrow one whereby lands are conveyed. This is true although, when used in this State, it is usually understood in the more limited and re-

stricted sense as referring to land conveyances. In 26 C. J. S. § 1, it is defined as follows: "In a broad, non-technical sense the word 'deed' is ordinarily employed as synonymous with 'act;' in a legal sense, however, a deed is a solemn document, and it has been defined as a writing or instrument on paper or parchment sealed and delivered, or, even more broadly, as a. written instrument under seal; a sealed instrument; a writing sealed and delivered; an instrument signed and sealed." At common law a deed is defined to be a writing sealed and delivered by the parties. 2 Bl. Com. 295; *Sterling* v. *Park,* 129 *Ga.* 309, 310 (58 S. E. 828, 13 L. R. A. (N. S.) 298, 121 Am. St. R. 224, 12 Ann. Cas. 201); 16 Am. Jur. § 2. Bouvier's Law Dictionary, among several definitions, defines a deed to be "A written instrument under seal, containing a contract or agreement which has been delivered by the party to be bound and accepted by the obligee or covenantee," citing Co. Litt. 171; 2 Bl. Com. 295; Shepp. Touchst. 50. See 11 Words & Phrases, 452-456. Notwithstanding, in popular vernacular, the term "deed" is seldom employed except as referring to land conveyances, it cannot be held that as used in the Code sections cited above, it must have such a narrow and restricted application, but that, when construed with the sections in which it is used as a whole, it includes all contracts or agreements whereby a wife in consequence of a separation has bona fide released her husband from her claims against him for permanent alimony which she acquired by virtue of the marriage relation. Upon subsequent voluntary cohabitation of the husband and wife all provision made for permanent alimony, whether by deed as used in the strict sense of a land conveyance, or in its broader sense of any written instrument under seal, simple contract, or decree of court, shall be annuled and set aside. This is as it should be. A situation cannot be conceived whereby the laws of this State would countenance and throw a protecting arm around a husband and shield him from the obligations and liabilities imposed upon him by law to support and provide a maintenance for his wife where he has resumed the marital status after having purchased from her his release from liability for permanent alimony by reason of a voluntary separation, or where he has against her will abandoned her or driven her off. Before the section here considered was placed in the Code of 1863, and as early as 1850, this court recognized the soundness of the ruling here made.

In *Chapman* v. *Gray,* 8 *Ga.* 341 (3), it was said: "An agreement for a separation will be rescinded, if the parties afterwards cohabit or live together as husband and wife, by mutual consent." We are dealing here with a contract which settled all claims for permanent alimony; and if there is a reconciliation in good faith on the part of the husband and wife and it is their intention to cohabit as husband and wife, the provision previously made for permanent alimony in the separation agreement shall be set aside, and the burden of supporting the wife cast anew upon the husband. What the law would be with reference to other deeds of separation, such as a division of property, and not in settlement of alimony, is not here for decision.

Counsel for the plaintiff contend that before the agreement could be annuled and set aside as provided by the Code, the wife must first restore to the husband what benefits she received under the contract. It has many times been held that an order for temporary alimony is avoided by a reconciliation under the authority of this Code section. *Weeks* v. *Weeks,* 160 *Ga.* 369 (127 S. E. 772); *Mosely* v. *Mosely,* 181 *Ga.* 543 (182 S. E. 849); *Thomas* v. *Smith,* 185 *Ga.* 243 (194 S. E. 502). No question has ever been raised that the benefits received by a wife pursuant to an order for temporary alimony should be returned to the husband before such order could be avoided upon reconciliation. In this case the plaintiff concedes that the court was authorized to find that a reconciliation had been effected and had extended over a period of more than a year. This reconciliation took place about a year after the separation agreement; and there is no evidence that the wife at that time possessed any of the money received by her under the contract. The record is silent as to whether the husband put the wife upon terms when he evidently welcomed her back into his home. If none of the consideration paid under the agreement was returned to him at that time by the wife, or if there was no demand by the husband for its return, or promise by the wife to return it, it might be that after such acquiescence on the part of the husband his consent for the wife to retain the unconsumed part of the consideration, if it were shown that the wife still possessed any part of it, would be inferred. We do not think it was necessary for the wife, under the circumstances, to return the property received under the separation agreement, or its proceeds, in order for the sub-

sequent voluntary cohabitation to render the agreement a nullity. The husband effectually gave his consent to annulling the agreement, by resuming the marital status. This is not a case where the wife sought rescission of the contract, in which event it would have been necessary for her to restore to the husband the benefits received by her under it. It is a case where the nullity arises by reason of the happening of certain events which the law says will render the contract void. Many authorities from foreign jurisdictions might be cited in support of the views here expressed. A few will suffice. A general statement on the subject in 30 C. J. 1065, § 847, is as follows: "As a general rule, a contract of separation is deemed to be annulled, avoided, and rescinded, at least as to the future, or as to executory provisions, by a reconciliation and resumption of the marital relation, even if such resumption . . is only for a very brief time. It is not essential to the application of the rule that the wife restore to the husband the money or property which she has received under the agreement." See also Harrison v. Harrison, 201 Mo. App. 465 (211 S. W. 708); Moore v. Moore, 185 N. C. 332 (117 S. E. 12); Knapp v. Knapp, 95 Mich. 474 (55 N. W. 353); Kehr v. Smith, 20 Wall. 31 (22 L. ed. 313). It might be that if the deed of separation should be a conveyance of land, the deed could be set aside on timely action of the husband, provided the wife still retained title to the property at the time of subsequent cohabitation. But on the other hand, if the separation agreement provided for payment of a certain sum to the wife and the contract had become executed before the reconciliation, and the wife had received all the consideration stipulated in the contract, our courts are not powerless to adjust the equities of the parties in the event of another separation and application for support; and this is true notwithstanding the wife was permitted to retain the unconsumed benefits received by her under the separation agreement. In such case the court in awarding alimony and attorneys' fees would take into consideration all the circumstances of the parties, i. e., the peculiar necessities of the wife, growing out of the pending litigation, her physical condition and her ability to contribute to her support, her separate estate, if any, including the consideration, or what remained thereof, paid under the former agreement, as compared with that of her husband, and his ability to pay. Code, §§ 30-202, 30-203.

Temporary alimony is allowable to a wife during the pendency of action for divorce at the instance of either party, or suit by the wife for permanent alimony. Code, § 30-202; *Banks* v. *Banks,* 149 *Ga.* 517 (101 S. E. 114). Counsel fees for representing a wife in an application for permanent alimony are allowable as expenses of litigation, as temporary alimony is allowed. *Knox* v. *Knox,* 139 *Ga.* 480 (77 S. E. 628); *Wise* v. *Wise,* 157 *Ga.* 814 (122 S. E. 210); *Alford* v. *Alford,* 189 *Ga.* 630 (7 S. E. 2d, 278). No other attack having been made against the award, and the plaintiff having conceded "that the evidence submitted to the court was sufficient to authorize the allowance of alimony and attorneys' fees," it follows, in view of the conclusions here expressed, that the judgment awarding to the wife temporary alimony and attorneys' fee must be

*Affirmed. All the Justices concur.*