### POWELL *v.* POWELL.

724

No. 15250.   September 7, 1945.

*M. E. O'Neal* and *Vance Custer,* for plaintiff in error.

*H. G. Bell* and *A. B. Conger,* contra.

Wyatt, Justice.  ■  Counsel for the plaintiff in error, in their brief, very conveniently set forth their contentions under four divisions, and we thus deal with the questions raised.

The first contention is: "Under the facts of this case, a judgment allowing alimony in some amount was demanded in favor of the wife." Code, § 53-508, is cited and relied upon. This section reads as follows: "The husband shall be bound for necessaries furnished to the wife when separated from him, subject to the limitations herein provided. If the wife shall be living in adultery with another man, the husband shall not be liable. Notice by the husband shall not relieve him from liability, if his wife shall be separated from him by reason of his own misconduct. If she shall voluntarily abandon him without sufficient provocation, notice by the husband shall relieve him of all liability for necessaries furnished to her." It is contended that this section

and *Sikes* v. *Sikes,* 143 *Ga.* 314 (85 S. E. 193), and other cases of like import (when it is shown that a husband and wife are living in a bona fide state of separation), demand as a matter of law a judgment in some amount as alimony for the support of the wife, unless the husband can show adultery on the part of the wife, or that she voluntarily abandoned him without sufficient provocation. It is contended that no such showing was made in the instant case. This contention can not prevail for the reason that the husband did insist that his wife voluntarily abandoned him without sufficient provocation. Furthermore, the evidence was uncertain and conflicting as to the financial worth and net income of the husband. On November 23, 1940, he paid to his wife $7000 in cash, and delivered to her an automobile. At the time of the trial she was earning $23.70 per week. Can it be said that the jury under all the facts and circumstances were not authorized to say that she had been adequately provided for from her husband's estate? We think not. Moreover, the $7000 and the automobile constituted the consideration of a contract dated November 23, 1940, in full settlement of all alimony claims of the wife against her husband. The wife contended that subsequently to the execution of the contract there was a reconciliation, and that they again lived together as husband and wife. This the husband denied, his contention being that, while his wife and her mother for a time after November 23, 1940, did live in his home or apartment, they occupied a separate room; that the defendant was employed by him to work in his place of business, for which she received a salary; and that he and his wife never, after November 23, 1940, lived together as husband and wife. The evidence on this issue was conflicting. The jury was authorized to, and so far as we know did, find that after November 23, 1940, there was no reconciliation and cohabitation, and that the contract of November 23, 1940, was therefore a bar to the recovery of alimony.

■ The contention is made that "the court erred in submitting to the jury the validity of the marriage. (a) Even if the judgment of Worth superior court was constitutional, such restrictions on remarriage were not extraterritorial in effect. (b) If the original ceremonial marriage between the parties in Georgia was defective because of the previous undissolved marriage of the hus-

band, a good common-law marriage was subsequently established in Florida."

The evidence disclosed that R. F. Powell married the defendant on April 8, 1917. He married Pauline Hornsby on December 27, 1910. The first wife, as plaintiff, obtained a divorce from Powell in Worth superior court on July 22, 1918. The verdicts read as follows: 1. "We, the jury, find that sufficient proofs have been submitted to us to warrant the granting to [sic] a total divorce, a vinculo matrimonii, upon legal principles between the parties, and we so find and find generally in favor of the plaintiff." 2. "We, the jury, find that sufficient proofs have been submitted to us to warrant the finding upon legal principles of a total divorce in favor of the plaintiff against the defendant, a vinculo matrimonii between the plaintiff and the defendant and we so find, finding generally for the plaintiff." The judgment of the court rendered upon these verdicts was, in part, as follows: "Two concurring verdicts favoring a total divorce to the plaintiff having been rendered in the above-stated case, it is considered, ordered, and adjudged that the said marriage between the said parties be, and the same is hereby, annulled, and a total divorce granted between the parties, with full liberty to the plaintiff, the said Mrs. Nisi Powell, to marry again, but without such liberty to the said defendant, the said Raymond F. Powell, who is hereby placed under disability to remarry, until such disability be removed by proper proceeding and judgment as provided by law in such cases." On the trial of the instant case, the court ruled out of evidence the following portion of the judgment: "but without such liberty to the said defendant, the said Raymond F. Powell, who is hereby placed under disability to remarry, until such disability be removed by proper proceeding and judgment as provided by law in such cases."

The court charged the jury on this subject as follows: "In this case certain issues have been raised to the grant of alimony by the husband's pleadings subsequent to the petition for divorce, which, as previously explained to you, has been dismissed. First, the plaintiff contends that, because of a previously existing marriage, he was unable to contract marriage with the defendant, and that his marriage to her was therefore void. Of course, if she is not his wife she can not recover alimony. In passing upon that

issue there are certain rules of law which the court will give you in charge for your guidance. Whoever attacks the validity of a marriage has the burden of proving its invalidity by clear, distinct, and positive proof. The presumption as to the validity of a marriage can only be negatived by disproving every reasonable possibility. Where a second marriage by a person is established, and it is shown that he or she had previously married another person, who is living at the time of the second marriage, the presumption is that the first marriage had been dissolved by a decree of divorce, and the burden is upon the person attacking the validity of the second marriage to show that a divorce had not been granted. In this case, a proceeding in Worth superior court between the alleged former wife of the plaintiff and himself as defendant therein has been introduced, showing a divorce between the parties and a dissolution of that marriage. The decree based upon the jury verdicts in that case places in that case R. F. Powell, who is the plaintiff here, under disability to remarry, but the court has excluded from your consideration that portion of the judgment or decree. The constitution of this State vests the power and responsibility of fixing the disabilities of the parties upon the jury rendering the final verdict in divorce cases, and the jury in that case having found for a total divorce between the parties without placing either of them under disability to remarry, I charge you as a matter of law that the disabilities of both parties were thereby relieved. Now that brings up this question. If the marriage of the plaintiff and defendant in the case on trial was contracted at a time when the plaintiff was unable to marry because of his previous undissolved marriage, but if plaintiff and defendant continued to live together as husband and wife after the grant of the divorce in his former wife's case, the continued cohabitation as man and wife will, in the absence of anything appearing to the contrary, cause the original declaration of intent to be treated as continuing and they would thereupon become husband and wife under a valid common-law marriage."

The plaintiff in error, in the brief filed in this court, complains of the following sentence in the above excerpt from the charge: "If she is not his wife she can not recover alimony," the contention being "that all of the evidence demanded a finding that the plaintiff in error was his wife, and it was harmful error for the

court to so instruct the jury." It will be noted that the sentence complained of was used when the judge was stating the contentions of the parties as contained .in the pleadings, and is immediately followed by a statement of the rules of law applicable. The charge of the court was to the effect that Powell was divorced from his former wife, and that his disabilities were removed. Consequently, the argument concerning whether or not the judge or jury has the right to remove the disabilities of the defendant, whether a general verdict for divorce without more has the effect of removing the disabilities of the defendant, and whether a restriction against remarriage can have extraterritorial effect, becomes unimportant from the standpoint of the plaintiff in error, for the reason that the judge charged the jury that Powell was divorced from his former wife and his disabilities were removed. The divorce, however, was subsequent to the marriage of Powell to the defendant in this case. The court therefore charged the jury that, notwithstanding the fact that Powell was not divorced from his former wife at the time of his marriage to the defendant, if he continued to live with the defendant after he was divorced this cohabitation would be a valid common-law marriage. We fail to see how the charge could have been more favorable to the plaintiff in error.

The plaintiff in error complains that "the court erred in admitting in evidence, and submitting to the jury, the contract of November 23, 1940." The contract here referred to is the contract dealt with by this court in *Powell* v. *Powell*, 196 *Ga.* 694 (27 S. E. 393), where the contract is quoted in full. There the question passed upon was whether the trial judge committed error in allowing temporary alimony and attorneys' fees, it being the husband's contention that he was relieved of the payment of alimony by reason of the contract of November 23, 1940, regardless of whether there had been a subsequent reconciliation and cohabitation. He contended then, as now, that there had been no such reconciliation or cohabitation. He stipulated, for the purposes of that case, that the judge was authorized to find that there had been a reconciliation and cohabitation. He did not stipulate as a fact that there had been such a reconciliation and cohabitation. It is now contended by the plaintiff in error that the holding of this court in *Powell* v. *Powell,* supra, is the law of the case, and for that

reason the defendant in error can not now contend that the contract has not been rendered void by reason of a subsequent cohabitation. If this court should so hold, we would stipulate facts for the defendant in error that he did not stipulate. This we will not do. We think that any language used in the opinion in that case must be construed in the light of the stipulation there quoted in full. Thus construed, there is no merit in this contention on the part of the plaintiff in error.

It is further contended that the evidence in this case, in its legal meaning, showed a reconciliation and cohabitation. *Phinizy* v. *Phinizy,* 154 *Ga.* 199 (114 S. E. 185), is relied upon for this position. In the *Phinizy* case the question under consideration was condonation of cruel treatment, while here we have under consideration reconciliation and cohabitation. Whether or not this makes any difference in the rule of law to be applied, we think the *Phinizy* case easily distinguishable on its facts from the instant case. There the husband admitted that he occupied the same room with his wife at a hotel at White Sulphur Springs for two nights, and did not remember whether or not he and his wife occupied the same room at Atlantic City. Here Powell testified: "But she come back to my place; she drove up with a bunch of canary birds and asked me who was living in the apartment. When I told her nobody, she told me that she and her mama were fixing to move up there because her mama's house had burned; then she asked me to come out to Shorty's that night to talk it over, and I went, but I told her I wasn't going to get myself in a mess like I was in before, for she had her money and I had mine, and she said, 'No, that ain't crossed my mind.' I then told her, 'I will let you and your mother go up to the apartment on one condition, you run your business and I will run mine.' She was just to stay until her mother's place was fixed up. We did not live together as man and wife. I started building this place on the corner, and just about the time I got this place built she asked, who was going to work down there, and I told her I didn't know. She said, 'How about giving me and sister a job?' and I told her I had just as soon work them as anybody else, so her mother came and they lived in my apartment. I paid her $20 a week to start off with, and her sister $15 a week, and her little niece $8 or $10. . . I did not make any effort to get Mrs. Powell to come back

to me after the separation. . . When she came back, she, Juanita Lunsford, and her mother and sister lived up there in the apartment in room [sic] except one of them slept in the living room. I slept in the front room by myself."

We think the question here raised is controlled in principle by the ruling in *Westberry* v. *Westberry*, 173 *Ga.* 42 (159 S. E. 671).

The contentions with respect to the contract of November 23, 1940, are without merit.

■ The contention is made that "the court erred in failing to charge as to what cruel treatment on the part of the husband would justify a wife in leaving him and living separate and apart from him." *Durham* v. *Durham*, 156 *Ga.* 454 (7) (119 S. E. 702), is relied upon. In the *Durham* case alimony was allowed, and the husband complained because the court failed to define cruel treatment. This court there held that it was error for the trial court to fail to give to the jury any definition of cruel treatment. In the instant case, alimony was denied, and the complaining party is the wife.

The judge charged the jury as follows: "Permanent alimony shall be granted in the following cases: 1. In cases of divorce. 2. In cases of voluntary separations. 3. Where the wife, against her will, shall either be abandoned or driven off by her husband. As explained to you, there is now no case for divorce, and the claim for permanent alimony is based upon the bona fide separation of the parties, which is undisputed, and the claim of the defendant that she was driven off by the plaintiff." The first four sentences of this charge are a quotation from the Code, § 30-210. The record in the *Durham* case has been examined. The trial judge did not there charge in the language of the Code. He used the following language: "If she was driven from her home by the cruel treatment of her husband as alleged, she would be entitled to such an amount as you think proper from the evidence." The trial court in that case did not elsewhere in the charge define the meaning of the term "cruel treatment." In the instant case, the words "cruel treatment" were not used; the charge was in the exact language of the Code section. We think that, if further elucidation of this Code section was desired, a timely written request should have been presented. Furthermore, in the instant case the judge, after charging that alimony shall be granted "in

cases of voluntary separation," charged the jury, "the bona fide separation of the parties, which is undisputed." Certainly no more favorable charge as to the right of the plaintiff in error to recover alimony could have been given. Any definition of cruel treatment could not have enlarged the scope of this broad charge. We fail to see, therefore, how the plaintiff in error could have been harmed in the slightest by the failure to define cruel treatment.

From what has been said above, it follows that there was no error in denying the motion for new trial.

*Judgment affirmed. All the Justices concur.*