MOSS *v.* MOSS.

No. 15264.   November 15, 1945.

*Y. A. Henderson* and *Neel & Ault,* for plaintiff in error.

*J. G. B. Erwin* and *Mitchell & Mitchell,* contra.

BELL, Chief Justice. The evidence need not be set forth in detail. Each of the parties made a case of extreme cruelty and blame against the other, and we think that only a few points require discussion.

Under the Code, § 30-217, as construed in *Powell* v. *Powell,* 196 *Ga.* 694 (27 S. E. 2d, 393), the contract of May 17, 1944, so far as it constituted a settlement of alimony and attorneys' fees, was nullified by the subsequent voluntary cohabitation of the parties; nor did this result depend on a restoration of the $8000 received by the wife under such settlement. The husband, in voluntarily renewing cohabitation without requiring a restoration, evidently

intended for his wife to retain the sum paid, or the unconsumed part of it, as her separate estate. If he had demanded a restoration, the reunion might not have taken place; and now that the reunion itself has failed, the court could not well go back and impose conditions which he himself did not see fit to impose at the time cohabitation was resumed. See, in this connection, 17 Am. Jur. 551, § 735; 30 C. J. 1065, § 847; 42 C. J. S. 185, § 601.

He contends, however, that the contract of May 17, 1944, was not merely a settlement of alimony, but was a "final property settlement," citing Re Estate of William Stanley Ray, 304 Pa. 421 (156 Atl. 64, 79 A. L. R. 771). It is insisted that the contract differs in this respect from the one dealt with in the *Powell* case, supra, and bars Mrs. Moss from any further right to alimony. Alimony and attorneys' fees are all that are now for determination, and whatever effect the contract may have on other rights, in the event of a controversy regarding them, it is quite plain that, so far as alimony and attorneys' fees are concerned, the contract is subject to the provision that, "The subsequent voluntary cohabitation of the husband and wife shall annul and set aside all provision made, either by deed or decree, for permanent alimony." Code, § 30-217. See further, as to property and alimony settlements: *Lemon* v. *Lemon,* 141 *Ga.* 448 (1b) (81 S. E. 118); *Young* v. *Young,* 150 *Ga.* 515 (3) (104 S. E. 149); *Smith* v. *Smith,* 187 *Ga.* 743 (2 S. E. 2d, 417); *Hamby* v. *Pye,* 195 *Ga.* 366 (24 S. E. 2d, 201); Dennis *v.* Perkins, 88 Kan. 428 (129 Pac. 165, 43 L. R. A. (N. S.) 1219); Garrett *v.* Kirtley, 97 W. Va. 484 (125 S. E. 347, 40 A. L. R. 1222); Hagerty *v.* Union Guardian Trust Co., 258 Mich. 133 (242 N. W. 211, 85 A. L. R. 417); 42 C. J. S. 168, § 591.

Nevertheless, as was said in the *Powell* case, the courts are not powerless to adjust the equities of the parties in the event of another separation and application for support. "In such case the court in awarding alimony and attorneys' fees would take into consideration all the circumstances of the parties, i. e., the peculiar necessities of the wife, growing out of the pending litigation, her physical condition and her ability to contribute to her support, her separate estate, if any, including the consideration, or what remained thereof, paid under the former agreement, as compared with that of her husband, and his ability to pay." *Powell* v. *Powell,* 196 *Ga.* 694, 701 (supra).

Mrs. Moss testified that she still had about $7000 of the amount she had received from Mr. Moss under the foregoing contract. He contends that, considering this and other property he had given to her, she has a separate estate sufficient for her support, and is also financially able to conduct this litigation. The exceptions not only raise the question whether the facts and circumstances were such as to authorize allowance of any amount whatever as temporary alimony or attorneys' fees, but they also complain that each of the amounts allowed was excessive.

It appeared from the evidence that, some time before the first separation, Mr. Moss had given to Mrs. Moss a house with several acres of land, at Rising Fawn, in Dade County. Under the evidence, the judge could have found that this property was worth only about $5000. So, it appeared that the wife's separate estate, including the unconsumed part of the alimony settlement, amounted to about $12,000. According to the husband's own admission, he owned property, consisting of farms, a sawmill, gin, and home, worth about $133,000, and his liabilities were about $26,000. The evidence further authorized a finding that, despite his bad health and other difficulties, the various business enterprises conducted by him were in prosperous condition. He testified: "Defendant has drawn numerous checks from $100 to $250 per month and has checked out as much as $450 in cash in one month, and refused to tell plaintiff what she was doing with said money, and on one occasion took $300 in traveler's checks from plaintiff's home and used them for her own personal use. Plaintiff has stood for this, hoping to have a little peace, but the more money she had the worse she became in her treatment of plaintiff."

Mrs. Moss testified: "I think it would take $500 a month to maintain me in the way Mr. Moss and I lived prior to the time of the separation. You know I have a child. Before we married, when I was getting my divorce, he asked me to withdraw the alimony part from the Hair family. He told me he would adopt my child, or put the money aside to put her through high school and college, but he did neither."

The evidence showed Mrs. Moss to be about 32 years of age, while Mr. Moss is about 57. He had been married before, his first wife having died. There are three children of that marriage,

all having reached their majority. There are no children of the present marriage.

Since the separation, Mr. Moss has been living in one of his farm houses, while Mrs. Moss has continued to occupy the dwelling house in which they had formerly lived together, in Calhoun, Georgia. She testified that this house would rent for about $50 per month. It is insisted that the judge overlooked and failed to consider these facts in determining the amount of alimony which he would allow; also that he failed to take into consideration the separate estate of the defendant, including the amount received by her under the contract of May 17, 1944, and previous contributions made by the plaintiff in the creation of her said separate estate. There is nothing in the record or bill of exceptions to show affirmatively that the judge failed to consider any of these matters, and, consequently, it must be assumed that he did consider them. While it may be true that the separate estate of Mrs. Moss was such that she herself could have paid for the services of her attorneys, and could also have paid for her maintenance and support pending a determination of the issue as to permanent alimony, yet, under all the circumstances of the case, including the husband's financial status, the judge was not required as a matter of law to render judgment against her upon that ground. The Code, § 30-203, provides that: "In arriving at the proper provision, the judge shall consider the peculiar necessities of the wife, growing out of the pending litigation; also any evidence of a separate estate owned by the wife, and if such estate is ample, as compared with the husband's, temporary alimony *may be refused.*" (Italics ours.) Thus, while the judge might have refused temporary alimony, he was not required to do so in the circumstances presented. *Ayers* v. *Ayers,* 191 *Ga.* 777 (13 S. E. 2d, 778). The decisions in *Pinckard* v. *Pinckard,* 22 *Ga.* 31 (68 Am. D. 481), and *Killiam* v. *Killiam,* 25 *Ga.* 186, when considered in the light of their facts, do not require a different conclusion; nor do any of the other decisions cited for the plaintiff in error, including several by courts of other States. On the general question, see Hood *v.* Hood, 138 Md. 355 (113 Atl. 895, 15 A. L. R. 774), with the annotation in A. L. R. beginning at page 781.

Under our law, the judge has a broad discretion, and it will not be controlled by this court unless it has been manifestly abused.

*Etheridge* v. *Etheridge,* 149 *Ga.* 44 (99 S. E. 37); *Rigdon* v. *Rigdon,* 174 *Ga.* 903 (164 S. E. 677); *Caswell* v. *Caswell,* 179 *Ga.* 676 (177 S. E. 247). Under the facts and circumstances of this case, the judge was authorized in his discretion to allow some amounts as temporary alimony and attorneys' fees, and it cannot be said as a matter of law that either amount was excessive. As to attorneys' fees, see *Collins* v. *Collins,* 29 *Ga.* 517; *Rogers* v. *Rogers,* 103 *Ga.* 763 (30 S. E. 659); *Spooner* v. *Spooner,* 149 *Ga.* 467 (100 S. E. 571); *Statham* v. *Statham,* 182 *Ga.* 805 (187 S. E. 17); *Morris* v. *West,* 183 *Ga.* 214 (187 S. E. 861); *Hall* v. *Hall,* 185 *Ga.* 502, 506 (4) (195 S. E. 731).

*Judgment affirmed. All the Justices concur, except Head, J., who dissents.*