## A02A2295. ADCOCK v. ADCOCK et al.
### (577 SE2d 842)

ELDRIDGE, Judge.

Hugh D. Adcock, Jr. died on April 14, 2001. Thereafter, appellee-defendant Gregory Dodd Adcock, individually; as temporary administrator of the estate of Hugh D. Adcock, Jr.; as heir of Hugh D. Adcock, Jr.; and as sole beneficiary under the will of Hugh D. Adcock, Jr. and sole heir, offered a petition to probate his father's will in the Probate Court of Bartow County. Mr. Adcock's second wife, appellant-plaintiff Geraldine R. Adcock, filed a caveat to the will, asserting a spouse's interest in the estate. The probate judge granted the appellee's motion to dismiss the caveat, concluding that the settlement agreement reached by the Adcocks following their separation constituted a renunciation of inheritance rights. Subsequently, Mrs. Adcock filed the instant declaratory judgment action in the Superior Court of Bartow County, under OCGA § 19-6-12, seeking a declaration of her spousal rights in the marital residence she had lived in with Mr. Adcock. Mrs. Adcock now appeals from the superior court's order granting summary judgment to the appellee in such action, contending that the superior court erred in finding, as a matter of law, that a deed made under a separation agreement remains enforceable after she reconciled and voluntarily cohabited with Mr. Adcock before his death. Likewise finding that the Adcocks' reconciliation did not vitiate the separation agreement as to the division of property in issue under OCGA § 19-6-12, we affirm.

Pertinently, the record shows that the Adcocks separated on October 13, 2000, having lived together as man and wife for nearly nine years. On October 16, 2000, Mr. Adcock filed a petition for divorce in the Superior Court of Bartow County, and the couple thereafter entered into a separation agreement which, among other things, divided the debts of the parties; divided their property, real and personal; and provided that no alimony was to be awarded to either party. The agreement further specified that it was a full and final settlement of any and all claims either party might have against the other arising out of the marital contract and renounced any benefits provided by the will of either party unless executed after the date of the separation agreement. Pursuant to the separation agreement, executed on October 27, 2000, Mrs. Adcock thereafter removed her personal property from the marital residence and by quitclaim deed transferred her one-half interest therein to Mr. Adcock. In September 2000, Mrs. Adcock had received a cash payment from Mr. Adcock in the amount of $150,000 related to the residence. The validity of the transfer of property under OCGA § 19-6-12 is here in issue.

OCGA § 19-6-12 provides:

> The *subsequent voluntary cohabitation of spouses, where there has been no total divorce between them, shall annul and set aside all provision made* either by deed or decree *for permanent alimony*; provided that the rights of children under any deed of separation or voluntary provision or decree for alimony shall not be affected by such subsequent voluntary cohabitation of the spouses.

(Emphasis supplied.) That Mrs. Adcock and the decedent voluntarily reconciled and lived together as man and wife is undisputed in the record. There also is no dispute that Mrs. Adcock received a $150,000 cash payment from Mr. Adcock as to the marital residence — this, in repayment of a loan she made to him before the couple's marriage which enabled Mr. Adcock to pay off the loan he then had on the residence. In this regard, the appellee supported his motion for summary judgment by his verified answer to Mrs. Adcock's complaint. Such verification, as not showing that it was made upon personal knowledge, however, was insufficient to raise a jury issue. See *Moore v. Goldome Credit Corp.*, 187 Ga. App. 594, 596 (370 SE2d 843) (1988) (verified pleading has no greater effect than affidavit tendered under OCGA § 9-11-56 (e) and must comply with the requirement that both supporting and opposing affidavits shall be made on "personal knowledge"); see also *Holland v. Sanfax Corp.*, 106 Ga. App. 1, 5 (126 SE2d 442) (1962) ("A statement in the jurat to the effect that the affidavit is made upon personal belief is generally sufficient. However, where the contents of the deposition show that the material parts of it are statements of personal knowledge, the requirement as to personal knowledge is met although the jurat does not so state.") (citations omitted). In any event, Mrs. Adcock's deposition testimony on these questions in response to summary judgment was unambiguous in showing that reconciliation occurred after the instant separation agreement was executed and during the pendency of the divorce action approximately four months before Mr. Adcock's death; that Mrs. Adcock conveyed her interest in the marital residence under the separation agreement; and that such conveyance was independent of the payment Mrs. Adcock had received from Mr. Adcock in repayment of the loan she had made to him years earlier.

The question which remains, then, is whether the separation agreement entered into by the parties may be deemed a deed or decree for permanent alimony within the meaning of OCGA § 19-6-12. In this regard, the superior court ruled that the separation agreement was in the nature of an "executed property settlement . . . not rendered void by cohabitation" in that by its own terms it foreclosed any award of alimony to the parties. We agree.

OCGA § 19-6-12 provides authority to set aside provision made in the separation agreement for permanent alimony alone upon cohabitation after the execution of the agreement and before total divorce. *Powell v. Powell*, 196 Ga. 694, 700 (2) (27 SE2d 393) (1943). The express terms of the separation agreement barred alimony to either party. There is otherwise no evidence that the property was transferred as alimony. See *Spivey v. McClellan*, 259 Ga. 181, 182 (378 SE2d 123) (1989) ("Fixed allocations of economic resources between spouses, those that are already vested or perfected, are not subject to modification by the court while terminable allocations are. [Cits.]").[1] Under these circumstances, the reconciliation of the parties is insufficient to annul the conveyance. See *McKissick v. McKissick*, 244 Ga. 425 (260 SE2d 334) (1979) (physical precedent); *Goodman v. Goodman*, 254 Ga. 703 (334 SE2d 179) (1985) (voluntary cohabitation insufficient to annul earlier property settlement where no evidence showing such settlement as in the nature of alimony).

*Judgment affirmed. Smith, C. J., and Ellington, J., concur.*

DECIDED FEBRUARY 7, 2003.

*Akin & Tate, William M. Akin*, for appellant.
*Charles Crawford*, for appellees.

---

[1] "Terminable allocations are economic allocations to a spouse that must be paid or delivered in the future and either contain no time limitation or contain an express provision that it shall terminate on the death or remarriage of the receiving spouse. Such allocations generally include, *inter alia*, what is commonly termed 'periodic alimony' and payments for support. [Cit.]" (Emphasis in original.) *Spivey v. McClellan*, supra at 182, n. 1.

[*] "A person commits the offense of financial transaction card fraud when with intent to defraud the issuer . . . or any other person, he . . . [uses] for the purpose of obtaining money, goods, services, or anything else of value" a stolen financial transaction card. OCGA § 16-9-33 (a).