21295. REYNOLDS v. REYNOLDS.

Argued July 10, 1961—Decided September 8, 1961—Rehearing denied September 28, 1961.

*Gambrell, Harlan, Russell, Moye & Richardson, E. Smythe Gambrell, James C. Hill, Robert R. Richardson, Harold N. Hill, Jr., Floyd E. Siefferman, Jr., Charles C. Stebbins, Jr.,* for plaintiff in error.

*Troutman, Sams, Schroder & Lockerman, Robert L. Pennington, Aaron Kravitch, Joseph T. Grice, Bruce D. Dubberly, Richard M. Scarlett, L. Julian Bennett, Phyllis Kravitch,* contra.

HEAD, Presiding Justice. The present case began with the filing of a petition for divorce by the husband, with a subsequent response by the wife seeking alimony. The bill of excep-

tions contains 128 pages. A motion to dismiss certain assignments of error was filed which contains 12 pages, and a brief in support thereof. The transcript (pleadings, evidence, amended motion for new trial, and charge of the court) covers 2,272 pages. The original brief for the defendant (plaintiff in error in this court) contains 121 pages. Briefs of counsel for the plaintiff (defendant in error in this court) contain 483 pages. The reply brief for the defendant contains 110 pages, and her response to the motion to dismiss various assignments of error, 16 pages. The reply brief of counsel for the plaintiff contains 32 pages.

In calling attention to the size of the record in the present case the court does not intend any criticism of counsel for the parties as to the manner in which the case was tried, or the procedure followed in the trial court. It is the duty of this court to deal with the assignments of error, and this we shall do pursuant to the rule requiring that we "review all judgments, rulings, or orders excepted to which may affect the proceedings below." *Code* § 6-701, as amended, Ga. L. 1957, pp. 224, 230.

The parties will be referred to in the opinion as they appeared in the trial court.

1. Counsel for the plaintiff filed a motion to dismiss certain assignments of error on the grounds that a substantial amount of questions and answers and parts thereof, immaterial to the assignments of error, was permitted to remain in the transcript of the evidence in violation of *Code* § 70-305, as amended, Ga. L. 1953, Nov.-Dec. Sess., pp. 440, 446; and that the transcript further violates § 70-305, as amended, in that the documentary evidence was not briefed as required by law.

The certificate of the trial judge to the bill of exceptions demonstrates that a bona fide effort was made by counsel for the defendant to eliminate immaterial matter, and that certain evidence was included on the requirement of the judge. *Code* § 70-305, as amended, Ga. L. 1953, Nov.-Dec. Sess., pp. 440, 446, provides for a "summary of documentary evidence." *Code* § 70-301, as amended, Ga. L. 1957, pp. 224, 235, authorizes "copies or a summary of documentary evidence." The contention that the documentary evidence was not briefed as required is therefore without merit. The motion to dismiss is denied.

The plaintiff filed his petition for divorce on August 20, 1959, charging that the defendant had been "guilty of cruel and inhuman treatment." It was alleged that the defendant had been a resident of McIntosh County, but is now temporarily sojourning elsewhere. He prayed that the defendant be temporarily restrained, and permanently enjoined, from visiting his home in McIntosh County and from "interfering, annoying or in any manner disturbing plaintiff." On the same date the petition was filed the judge of the superior court entered an order requiring the defendant to show cause on September 4, 1959, why the prayers of the petition should not be granted, and in the meantime the defendant was "temporarily restrained from entering or visiting the residence" of the plaintiff in McIntosh County. The bill of exceptions recites that the sheriff of the county entered a return on August 22, 1959, that he had that day served the defendant "by leaving same at her residence."

On September 4, 1959, the date set for the hearing, the court entered an order reciting that the defendant had not filed any defensive pleadings, had not appeared, and that a copy of the order of August 20, 1959, together with a copy of the petition, was delivered to the defendant on August 21, 1959. The court continued the temporary restraining order and set the matter for hearing on November 27, 1959. On September 14, 1959, the sheriff filed a return in the case as follows: "After due and diligent search I have been unable to locate the said Muriel M. Reynolds, within my bailiwick, and am advised and believe the said defendant to be a nonresident of said State and county." On September 15, 1959, the plaintiff amended his petition by adding a second count alleging that the defendant is a nonresident of the State, and praying for service by publication.

On October 22, 1959, the plaintiff filed an ex parte application to take his own testimony by written interrogatories on the ground that he is ill, and "that it is inadvisable for him at this time to leave his residence, travel and appear in court." On the same date the court granted the plaintiff's application and set the date for the propounding to the plaintiff of the written interrogatories on November 7, 1959. By subsequent order dated October 24, 1959, the court set the date for the propound-

ing of the interrogatories on November 21, 1959. On November 13, 1959, the defendant filed her verified answer, and at that time issue was joined.

On November 25, 1959, the defendant caused a subpoena to be directed to and served upon the plaintiff, commanding his appearance at a hearing set on December 15, 1959, to give oral testimony under cross-examination on behalf of the defendant, on the matter of the temporary injunction and on such other matters as his testimony might be required. On December 3, 1959, the plaintiff obtained an ex parte order continuing the hearing on the temporary injunction from December 15, 1959, to January 14, 1960. On December 17, 1959, the defendant filed a motion for permission to go into the residence where she and the plaintiff had been living, on Sapelo Island, for the purpose of removing her clothing, personal effects, and other property. The court set the motion for hearing on December 31, 1959. On December 18, 1959, the defendant caused to be issued a subpoena directed to, and served upon the plaintiff, commanding his appearance on December 29, 1959, for the taking of his oral depositions under cross-examination by the defendant at the courthouse in McIntosh County. On the same day the defendant served the plaintiff with a notice to produce certain specified documents at the time and place set for the hearing, and she also served the plaintiff's counsel with a copy of a notice of the taking of depositions, and with a copy of the notice to produce.

Prior to the date set for the taking of the plaintiff's oral depositions, and prior to the hearing of the defendant's motion for permission to go onto Sapelo Island for the purpose of obtaining her property which remained there, the plaintiff on December 21, 1959, filed a written application for, and obtained from the court, an ex parte order for a pretrial conference, on January 14, 1960. In addition to setting the pretrial conference, the court ordered as follows: "In the meantime all matters pending for a hearing in said case and cause of action, including the motion to modify the restraining order, the notice to take the depositions of the plaintiff, and the notice to produce certain records, documents, transactions, etc., are hereby postponed and

continued, and held in abeyance until after said pre-trial conference of said attorneys and until the further order of this court. The said Commissioner, Mrs. Minnie Lee Johnson, named as Court Commissioner, will suspend said hearing to take the depositions of said plaintiff until the further orders of this court."

In the first assignment of error in the bill of exceptions the defendant excepts to this part of the order on the ground that the ruling was erroneous, highly prejudicial, and contrary to law. It is asserted that: The order was not on motion of any party or by the person to be examined, as prescribed by law, but on the court's own motion, without any notice, as required by law. Without good cause shown, the order quashed and vacated the subpoena and notice for the taking of the plaintiff's depositions, and was contrary to the provisions of Ga. L. 1959, pp. 425, 432, (*Code Ann.* § 38-2105 (b)). The defendant's cause was greatly prejudiced by the court's order, in that she was prohibited from obtaining the oral depositions of the plaintiff under cross-examination at a time set by her when, in so far as was shown by the record then before the court, there was no impediment to the giving of such oral testimony.

The extract from the order of the court herein quoted, on the application of counsel for the plaintiff for pretrial conference, is clearly error. The act of 1953 (Ga. L. 1953, Jan.-Feb. Sess., p. 269, *Code Ann.* §§ 81-1013, 81-1014), which appears to be the same as Rule 16 of the Federal Rules of Civil Procedure (28 U.S.C.A., Rule 16, pp. 591, 592), does not, directly, or by inference, confer upon the judge of the superior court any power to vacate, modify, or set aside valid proceedings pending in the cause in which such pretrial conference is set by the court. Rule 16 of the Federal Rules was adopted to enable the court, by agreement and admission of the parties, to procure a speedy trial on simplified issues. Nichols v. Sanborn Co., 24 F. Supp. 908; Geopulos v. Mandes, 35 F. Supp. 276; Berger v. Brannan, 172 F.2d 241.

By an act of the General Assembly approved March 25, 1959 (Ga. L. 1959, p. 425), entitled, "Practice and Procedure—Depositions and Discovery," the General Assembly repealed *Code*

Chapter 38-14, relating to the perpetuation of testimony, and Chapters 38-21, 38-22, 38-23, and 38-25, relating to depositions and interrogatories; and enacted the pretrial deposition-discovery Rules 26, 27, 28, 29, 30, 31, 32, 33, 34, 35 and 37 of the Federal Rules of Civil Procedure (28 U.S.C.A., Rules 26 through 35, and 37).

Section 38-2101 of the new Georgia rules provides that: "Any party may take the testimony of any person, including a party by deposition upon oral examination or written interrogatories for the purpose of discovery or for use as evidence in the action or for both purposes." It is further provided in this section that after commencement of the action the deposition may be taken without leave of the court, where the action has been pending for more than 20 days.

Section 38-2105 (b) provides that after notice is served for the taking of a deposition or oral examination, *upon motion seasonably made* by any party or the person to be examined, and upon notice and good cause shown, the court in which the action is pending may make an order that the depositions shall not be taken. The court's order in the present case was entered without motion seasonably made, without notice, was without any cause shown by the plaintiff or his counsel, and was an unauthorized order prejudicial to the preparation of the defendant's defense and response praying for alimony.

The ruling herein made disposes of the fourth assignment of error in the bill of exceptions, excepting to the overruling of the defendant's application to take the oral depositions of the plaintiff at his home on Sapelo Island.

2. In the second assignment of error in the bill of exceptions error is assigned on the order of the court of January 14, 1960, quashing the defendant's notice to produce, served on the plaintiff on December 18, 1959, which called upon the plaintiff to produce the following items: "All private or personal 'diaries', logs, scrapbooks or memoranda of events, written or kept by or on behalf of said Richard J. Reynolds, from August 8, 1952, to the present date. Originals and/or copies of all canceled checks, statements of charges, bills, and any other memoranda showing or tending to show payments to or charges of any and all detec-

tives, investigators, agents or others made by or on behalf of the plaintiff, Richard J. Reynolds, for services in shadowing, following, or investigating the activities of Muriel M. Reynolds. All guest books or other records of Richard J. Reynolds or his employees showing or tending to show the names, addresses and identification of all the guests or other persons who have visited in the home of Richard J. Reynolds on Sapelo Island, McIntosh County, Georgia, during the period from August 8, 1952 to the present date."

. The plaintiff filed a response to the notice to produce on January 4, 1960, wherein it was asserted that the evidence sought was irrelevant and immaterial, might be embarrassing to the plaintiff, and would cause him to give evidence against himself. The court quashed and denied the defendant's notice to produce in so far as it related to the items hereinabove set out, in the pretrial order of January 14, 1960.

The defendant assigns error on this ruling of the court upon the grounds that the documents were in the plaintiff's possession, custody, and control, that they were relevant to the subject matter of the pending action, and included the identity and location of persons having knowledge of relevant facts, and the documents were calculated to lead to the discovery of admissible evidence, all as provided by law; that the ruling of the court was contrary to law, in that Ga. L. 1959, pp. 425, 426, 438 (*Code Ann.* §§ 38-2101, 38-2109) provides for the production of such documents, and the ruling of the court was prejudicial to the defendant. She was denied the right of discovery and the right to locate persons having knowledge of relevant facts favorable to her cause; she was never permitted to see the diaries, logs, scrapbooks, and memoranda of events of the plaintiff, and the statements of charges or bills of detectives and investigators, or the guest books, although the plaintiff admitted that such documents existed.

*Code Ann.* § 38-2109 provides that the court in which an action is pending may "order any party to produce and permit the inspection and copying or photographing, by or on behalf of the moving party, of any designated documents, papers, books, accounts, letters . . . *not privileged* [italics ours], which con-

stitute or contain evidence relating to any of the matters" permitted by § 38-2101 (b). In § 38-2101 (b) it is provided that the deponent may be examined regarding any matter "not privileged," including the existence, description, nature, etc., of books, documents, or other tangible things, and this section recites that it is not ground for objection that the testimony will be inadmissible, if the testimony sought appears reasonably calculated to lead to the discovery of admissible evidence.

The objections urged against the production of the documents and items set out did not show, or tend to show, that any of the items were privileged, or that they would not reasonably be calculated to lead to the discovery of admissible evidence on several of the issues in the cause, including the state of the plaintiff's health (it being contended that he was unable to attend court and testify in his own cause, or unable to testify by oral depositions), and admissible testimony on the good faith of the plaintiff's contentions that the defendant had been guilty of cruel treatment. The court erred in denying to the defendant and her counsel the right of examination of the items listed in her notice to produce.

3. By a "judgment of the court" entered on January 29, 1960, it was provided in part: "The plaintiff, Richard J. Reynolds, is not required to leave his home on Sapelo Island, Georgia, and go to Darien, Georgia, or elsewhere, either as a party or as a witness in this case, for the purpose of being examined or cross-examined. . . That it is the judgment of this court that the testimony of the said Richard J. Reynolds, either as a party or as a witness in this case, may be taken by the preparation and submission of written interrogatories, under the following terms, conditions and provisions, to wit: . . ." Then follows the procedure for the taking of the testimony of the plaintiff, Richard J. Reynolds, by written interrogatories.

In paragraph 2 of her objections, the defendant asserts: "that the same would permit the plaintiff to have his divorce case tried without leaving his home, without affording an opportunity to the defendant to confront the plaintiff, and without his being seen by the jury. Defendant thus would be deprived of the right of confrontation and the right to have the jury observe the de-

meanor of the plaintiff testifying under oath, and the right to have plaintiff give spontaneous answers. Thus defendant would be deprived of due process of law as provided in Article I, Paragraph III of the Constitution of the State of Georgia, which reads as follows: 'No person shall be deprived of life, liberty or property, except by due process of law,' and in Article XIV, Section 1 of the Constitution of the United States, which reads as follows: 'nor shall any State deprive any person of life, liberty or property without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.' " Paragraph 2 makes a similar objection.

In paragraph 7 she objects to a different phase of the interrogatory procedure on the ground that the defendant would be prohibited from attending the taking of the testimony of the plaintiff and thus prohibited from confronting her adversary, and she urges that she would be deprived of due process of law under the same constitutional provisions set out in paragraph 1. In paragraph 3 it is insisted that "the plaintiff has no legal right to take his own testimony by written, direct interrogatories, and the taking of the testimony of the plaintiff on written, direct interrogatories is contrary to the laws of this State. . ."

On February 12, 1960, the judge of the superior court passed an order on the objections of the defendant to the interrogatory procedure, wherein it was recited that "argument of counsel for both parties having been heard, it is hereby ordered that the same be and are hereby overruled." The bill of exceptions assigns this order as error as contrary to law, and highly prejudicial to the defendant, on the grounds stated in paragraphs 1, 2, 3, and 7 of the objections. It is insisted that the court should have sustained each of these grounds of objection, and should have required that if the plaintiff's testimony be taken in the case, he be required to submit to oral cross-examination by the defendant or her counsel, as required by law.

As heretofore set forth in Division 1 of this opinion, the General Assembly of Georgia by an act approved March 25, 1959 (Ga. L. 1959, p. 425) repealed Chapters 38-14, 38-21, 38-22, 38-23, and 38-25 of the Code, and enacted in lieu thereof Federal Rules of Civil Procedure 26 through 35, inclusive, and

Rule 37, the new act to be known as Chapter 38-21 of the Code. Section 38-2101 (a) of the new act provides in part: "When depositions may be taken. Any party may take the testimony of any person, including a party, by deposition upon oral examination or written interrogatories for the purpose of discovery or for use as evidence in the action or for both purposes." Section 38-2101 (d) provides: "Use of depositions. At the trial or upon the hearing of a motion or an interlocutory proceeding, any part or all of a deposition, so far as admissible under the rules of evidence, may be used against any party *who was present or represented at the taking of the deposition or who had due notice thereof, in accordance with any one of the following provisions*: . . ." (Italics ours.). Section (3) of subsection (d) provides in part: "The deposition of a witness, whether or not a party, taken upon written interrogatories, may be used by any party for any purpose if the court finds: . . ." Then follow six conditions upon which the deposition may be used.

The 1959 act has not been construed by this court. Counsel for the plaintiff have not cited any Federal decisions to the effect that a plaintiff in any civil action may take his testimony upon his own written interrogatories. Such decisions would not be binding on this court as precedents, but if in point on the issue, might be persuasive. Our somewhat exhaustive search of the Federal decisions has not revealed any case where any Federal court has held that a plaintiff in a civil action can, as a matter of right, take his own testimony upon written interrogatories.

In Smith v. Morrison-Knudsen Company, Inc., 22 F.R.D. 108, it is stated that: "Such decisions as exist in this field of the law [Federal discovery rules] indicate that there may be circumstances under which a plaintiff may take his own deposition upon written interrogatories. The present case, however, is *res integra*." (The term *res integra* "is applied to those points of law which have not been decided, which are untouched by *dictum* or decisions." Black's Law Dictionary, 3rd ed., p. 1539.) In the Smith case the plaintiff had filed a notice to take his own testimony by written interrogatories. The defendant filed a motion to vacate the plaintiff's notice, and this motion was granted by the court. As authority for the statement that there may be

circumstances under which a plaintiff may take his own testimony upon written interrogatories, the court referred to Richmond v. Brooks, 227 F.2d 490. In the Richmond case the former wife, a resident of California, sued the former husband, a resident of New York, to collect a debt, in the district court, and offered as her proof at the trial her deposition which had been taken by interrogatories and cross-interrogatories in California before the trial. The district judge refused to receive her interrogatories and dismissed her action for failure of proof. On review, the circuit court held the dismissal to be error. In Smith v. Morrison-Knudsen Company, Inc., supra, the court pointed out that in Richmond v. Brooks, supra, (1) the defendant therein did not object to the plaintiff taking her own deposition; (2) the defendant was content to conduct his cross-examination of the plaintiff upon written interrogatories without requesting leave for an oral examination; and (3) both the trial and appellate courts were concerned with evidentiary questions of admissibility of the deposition upon the trial, and not with the pretrial question of the propriety of the plaintiff taking her own deposition.

In the present case the defendant objected to the plaintiff taking his own deposition by written interrogatories, and sought to cross-examine him upon oral cross-examination. The deposition-interrogatory procedure outlined in § 38-2101 of the 1959 act clearly contemplates that such deposition, if admissible in evidence, would be admissible only "against any party who was present or represented at the taking of the deposition or who had due notice thereof," the purpose of notice being to afford the opposing party the opportunity to be present or be represented by counsel when the testimony is taken before the officer appointed by the court. In § 38-2105 (b) it is provided that after notice is served for the taking of a deposition by oral examination, the court in which the action is pending may order that the deposition not be taken, or that it be taken at some place other than that designated in the notice, or that it may be taken only on written interrogatories, *or that the examination shall be held with no one present except the parties to the action and their officers or counsel.* (Italics ours.) It is clear from this provision, in connection with other provisions

of the discovery mechanism of the adopted Federal Rules, that when a deposition is taken upon written interrogatories, the opposing party or his counsel have the right to be present. The exclusion of the defendant and her counsel from the taking of the deposition of the plaintiff on written interrogatories would void the procedure, if otherwise valid. This is true under the Federal discovery rules and the ruling in Smith v. Morrison-Knudsen Company, Inc., supra.

In Van Sciver v. Rothensies, 122 F.2d 697, taxpayers brought an action to recover taxes paid in the State of Pennsylvania, one of the plaintiffs being at the time in the State of Arizona for his health. In pointing out that there was no testimony by the resident of Arizona the court said that his testimony might have been taken by the use of depositions. This case does not support the theory that a plaintiff may prove his case by his own interrogatories under the procedure followed in the present case. None of the Federal Rules, including Rule 26 (*Code Ann. Supp.*, § 38-2101), can be construed as conferring upon a plaintiff in any civil action the absolute right to establish his case by his own written interrogatories.

Federal Rule 31 (*Code Ann. Supp.* § 38-2106 (a)) provides in part: "Serving interrogatories; notice. A party desiring to take the deposition of any person upon written interrogatories shall serve them upon every other party. . ." This provision of § 38-2106 referring to "any person" is limited to any person other than the party seeking discovery, for the reason that under the pretrial deposition-discovery mechanism established by Rules 26 through 37, the sole definite provision contained therein for a plaintiff to take his own testimony is to be found in Rule 27 (§ 38-2102), entitled, "Depositions before action or pending appeal." This rule provides for the taking of the testimony of a person who expects to be a party in an action in a court in the United States, or after an appeal from a judgment, provided the time for appeal has not passed. If it had been desired to extend to a party the right to take his own testimony under the deposition-discovery mechanism of the Federal Rules of Civil Procedure, the proper place to incorporate such provision would have been in Rule 33 (*Code Ann. Supp.* § 38-2108), entitled,

"Interrogatories to parties." Rule 33 (§ 38-2108), however, limits the right to take written interrogatories in the following language: "Any party may serve upon any adverse party written interrogatories to be answered by the party served. . ." The heading or title of Rule 33, "Interrogatories to parties," is broad enough to incorporate a provision for a plaintiff or a defendant to take his own testimony by written interrogatories. The rule as promulgated limits the taking of such interrogatories to service on an *adverse party* and to be answered by the *party served.*

Both Rule 31 and Rule 33 (*Code Ann. Supp.* §§ 38-2106, 38-2108) have been construed as being applicable to discovery "from an adverse party." In 4 Moore's Federal Practice, 2d ed., p. 2153, it is stated: "When discovery upon written interrogatories is sought from an adverse party . . . the party seeking discovery may proceed in either of two ways: (1) He may proceed under Rule 31, in which event the adverse party will have to appear before an officer to answer the written interrogatories read to him by the officer. Under this procedure the deposition of the adverse party is taken. . . (2) He may proceed under Rule 33 and serve the written interrogatories upon the adverse party who answers them under oath, but who is not required to appear before an officer to have his deposition taken. The answers to the written interrogatories are served upon the party who framed the interrogatories and are filed with the court."

The intent and purpose of the discovery procedure of the Federal Rules of Civil Procedure were clearly stated by the Supreme Court of the United States in Hickman v. Taylor, 329 U.S. 495, 500 (67 SC 385, 91 LE 451) wherein it is stated in part: "The pre-trial deposition-discovery mechanism established by Rules 26 to 37 is one of the most significant innovations of the Federal Rules of Civil Procedure. Under the prior federal practice, the pre-trial functions of notice-giving, issue-formulation and fact-revelation were performed primarily and inadequately by the pleadings. Inquiry into the issues and the facts before trial was narrowly confined and was often cumbersome in method. The new rules, however, restrict the pleadings to the task of general notice-giving and invest the deposition-discovery

process with a vital role in the preparation for trial. The various instruments of discovery now serve (1) as a device, along with the pre-trial hearing under Rule 16, to narrow and clarify the basic issues between the parties, and (2) as a device for ascertaining the facts, or information as to the existence or whereabouts of facts, relative to those issues. . . The deposition-discovery procedure simply advances the stage at which the disclosure can be compelled from the time of trial to the period preceding it, thus reducing the possibility of surprise."

The discovery procedure of the Federal Rules (26 through 37), adopted by the 1959 act of the General Assembly (*Code Ann. Supp. Ch.* 38-21) is primarily for discovery of each party from the other. There is the provision for the perpetuation of testimony, as hereinbefore pointed out, and the further provision that where the deposition of a party on oral examination is taken in accordance with the rules prior to trial, such deposition may, subject to the limitations imposed by Rule 26 (§ 38-2101), be used by either party where any of the required conditions exist: (1) that the witness is dead, or (2) that the witness is out of the county, etc. Thus, had the defendant been permitted to procure the oral depositions of the plaintiff by cross-examination, as was sought, and had it then been made to appear to the court that the plaintiff was unable to attend the trial, and had either party sought to use the deposition of such witness, and had it been admitted or rejected by the court, an entirely different situation would exist. This did not occur, and no intimation is made, or intended to be made, as to whether or not the deposition of a party taken for the purpose of discovery might properly be used in lieu of testimony from the witness stand. The purported testimony of the plaintiff by interrogatories was not pursuant to the deposition provision of Rule 26 (§ 38-2101) or any other section of the Federal Rules of Practice and Procedure. Hickman v. Taylor, supra. Such purported testimony was illegal, unauthorized, void, and wholly without probative value.

Whether or not, as was said in Smith v. Morrison-Knudsen Company, Inc., supra, there may be circumstances wherein a plaintiff may be authorized in some civil action to take his own testimony by written interrogatories, it is clear that the rule

could not apply to the plaintiff under the facts in the present divorce action.

"A divorce suit affects not merely the formal parties before the court, but society at large. . . On account of the peculiar interest of the public in the preservation of domestic relations provisions have been made by the Constitution of this State, and by legislative enactment, which take divorce suits out of the rules that govern other actions, and place restrictions around them indicating a policy to hinder facility in the procurement of divorces." *Watts v. Watts*, 130 Ga. 683, 684 (61 SE 593).

Under the Constitution of 1945, Art. VI, Sec. XIV, Par. I (*Code Ann.* § 2-4901) divorce cases "shall be brought in the county where the defendant resides, if a resident of this State; if the defendant be not a resident of this State, then in the county in which the plaintiff resides. . ." This provision of the Constitution fixing the venue in divorce cases is mandatory, exhaustive, and jurisdictional, and, accordingly, jurisdiction in such cases can not be conferred upon a court that has none by waiver, consent, or default in pleading, or otherwise, and this applies in divorce actions to both the person and the subject matter. *Cohen v. Cohen*, 209 Ga. 459 (74 SE2d 95).

"To protect society's interest in divorce actions *Code* § 30-129 provides that in undefended divorce actions the judge shall see that the grounds are legal and sustained by proof, or he shall appoint the solicitor-general, or other attorney, to discharge that duty for him. *Code* § 30-124 provides that the divorced person may resist removal of the disabilities of the opposite party and, should no person resist the removal, the solicitor-general shall represent the State with full power to resist such removal. *Code Ann.* § 30-113 provides that no verdict or judgment by default shall be taken in a divorce case. The amendment to the pleading and practice act of 1946 (*Code Ann.* §§ 110-401, 110-403) providing for default judgments, does not apply to divorce cases. *Cohen v. Cohen*, supra. The policy of the State since the adoption of the Constitution of 1798 has been 'to hinder facility in the procurement of divorces.' *Watts v. Watts*, 130 Ga. 683 (61 SE 593)." *Brackett v. Brackett*, 217 Ga. 84, 88 (121 SE2d 146).

The Federal courts in the District of Columbia are authorized by law to try divorce cases. In Cannon v. Cannon, 80 F. Supp. 79, the trial judge refused to let the plaintiff testify by interrogatories, and stated the rule in Federal courts with reference to the necessity of the appearance of the plaintiff in a divorce action in the following language: "It is the duty of the court in all divorce cases to stand as a representative of the State and protect its interests. Yeager v. Yeager, 43 Ind. App. 313, 87 NE 144. But, how can this be done when the complaining party does not appear and orally testify. Under such circumstances, the court is denied the right of cross-examination, and also the opportunity to observe the manner and demeanor of the witness while testifying. 'The power of cross-examination has been justly said to be one of the principal, as it certainly is one of the most efficacious, tests, which the law has devised for the discovery of truth.' Greenleaf Evid. (16th Ed.) § 446. Experience has demonstrated that one of the surest ways to determine the credibility of any witness is to observe the manner and demeanor of that witness on the stand. Without this opportunity to observe, the court is unable to determine the just weight and value of the testimony. *In order that the trial court may discharge fully and completely its duty to the State, there must be the personal appearance of the plaintiff at the hearing.* [Italics ours.] It has been the practice in this jurisdiction to require the presence of the plaintiff, and there is no reason here to dispense with that practice, nor to depart from the general rule requiring oral testimony in equity causes." In the Cannon case it is stated that "jurisdiction to hear and determine divorce actions is conferred upon the equity side of this court, and it is a general rule in trials in equity that the testimony of witnesses shall be heard orally by the court as in actions at law." It therefore appears that while jurisdiction to hear and try divorce actions was vested in the court under equity rules, the rules of evidence in actions at law would apply, and that under legal rules the plaintiffs in divorce actions must appear and testify.

The Cannon case, supra, is supported by the decision of the District Court for the District of Columbia in Pierce v. Pierce,

5 F.R.D. 125. In the Pierce case the defendant under the discovery mechanism of Rule 33 of the Federal Rules of Civil Procedure filed interrogatories directed to the plaintiff requesting information as to specific dates and places of the commission of alleged acts of adultery. In holding that the plaintiff would have to answer the interrogatories (being an adverse party under Rule 33) the court said: "The suggestion that it may embarrass the plaintiff to answer the interrogatories seems to be without merit, because at the trial, at least, the plaintiff will have to adduce the information requested in the interrogatories."

It is presumed that the General Assembly in the adoption of the discovery procedure of the Federal rules had knowledge of the general law of this State pertaining to the examination of witnesses. These general rules were not, either directly or impliedly, repealed by the adoption of the Federal discovery rules. Our *Code* § 38-1705, provides: "The right of cross-examination, thorough and sifting, shall belong to every party as to the witnesses called against him. . ." In construing this Code section in *Becker v. Donalson*, 133 Ga. 864 (4) (67 SE 92), this court held: "The right of cross-examination, thorough and sifting, which belongs to every party as to the witnesses against him, should not be abridged, especially where the witness is the opposite party to the cause on trial, and is testifying for the purpose of making out his own case." See also *Harris v. Central Railroad*, 78 Ga. 525, 534 (3 SE 355); *Barnwell v. Hannegan*, 105 Ga. 396, 398 (31 SE 116); *Rabun v. Wynn*, 209 Ga. 80 (5) (70 SE2d 745). The defendant having been denied the right of oral cross-examination of the plaintiff by oral deposition, which was timely sought, and the plaintiff not having been otherwise subjected to oral cross-examination by the defendant in any manner, a substantial right guaranteed to the defendant by our law was abridged, and the interrogatory procedure had at the direction of the court was for this reason null and void.

Counsel for the plaintiff cite and rely upon *Creech v. Ossep*, 149 Ga. 577 (101 SE 576); and *McAlpin v. Ryan*, 150 Ga. 746 (105 SE 289); as authority for the trial court to direct that the testimony of the plaintiff in the divorce action should be taken only by written interrogatories. Both of the cases cited relate

to the taking of "depositions before a Court Commissioner" pursuant to the provisions of Chapter 38-23 of the Code, which chapter was repealed by the act of 1959. If this chapter of the Code had not been repealed by the 1959 act, it would not constitute authority for the plaintiff in a divorce action to take his testimony by written interrogatories, since this chapter was limited to the taking of oral depositions of a witness before a commissioner appointed by the court. Section 38-2305 provided: 'The order and scope of the examination shall be had in conformity to the rules of the superior court covering the examination of witnesses in trials at law." Any witness so examined would have been examined in the presence of opposing counsel and would have been subjected to a thorough and sifting cross-examination as authorized by law in the conduct of trials in the superior courts of this State.

The act of 1958 (Ga. L. 1958, p. 315; *Code Ann.* § 30-113), providing that the practice and procedure in divorce cases in this State shall be the same as in other civil actions, does not vary, modify, or repeal the constitutional and statutory provisions pertaining to divorce as set forth herein.

The ruling made in this division is upon the fifth assignment of error in the bill of exceptions, pertaining to the defendant's objections to the interrogatory procedure prescribed by the court. The interrogatory procedure instituted under order of the court, wherein the plaintiff propounded interrogatories to be answered by himself, with both the defendant and her counsel excluded, being without authority of law, was wholly void and demands a reversal of the judgment denying the motion for new trial, as amended.

It is unnecessary to make independent rulings on issues growing out of the void interrogatory procedure. For this reason, assignments of error 3, 6, 7, 11, and 16 in the bill of exceptions, and grounds, 10, 11, and 12, grounds 53 through 72, and grounds 74, 75, 77, 78, and 80 of the motion for new trial, as amended, can not properly invoke a further ruling by this court on any phase of the interrogatory procedure.

4. The eighth assignment of error in the bill of exceptions is on the order of the court overruling, denying, and dismissing the

defendant's plea of the statute of frauds to the allegations in counts 1 and 2 of the petition, as amended, that the defendant promised the plaintiff that, although she was an alien citizen, being a citizen of Canada, she would, as quickly after their marriage as she could, change her citizenship and become a citizen of the United States; that instead of keeping this promise, the defendant never did change her citizenship. It was admitted by the plaintiff, in response to the defendant's motion for admission, that the defendant's alleged agreement was not in writing. In the ninth assignment of error in the bill of exceptions the defendant excepts to the overruling of her special demurrers 3 and 4 to the allegations in count 1, and her special demurrers 17 and 18 to the allegations in count 2, that the defendant promised to become a citizen of this country.

*Code* § 20-401 provides that certain obligations to be binding on the promisor must be in writing, signed by the party to be charged therewith, or some person by him lawfully authorized, and subsection (3) provides: "Any agreement made upon consideration of marriage, except marriage articles as provided in Chapter 53-4." The exception contained in Chapter 53-4 is to the effect that an agreement between the parties contemplating a future settlement upon the wife, whether by parol or in writing, may be enforced in a court of equity by the wife at any time during the life of the husband. *Code* § 53-401.

The agreement of the defendant, if made as contended by the plaintiff, was unenforceable under the statute of frauds, since the promise did not fall within any exception to the statute. The allegations as to citizenship not being germane on the charge of cruel treatment, upon which ground the plaintiff sought a divorce, and being highly prejudicial in character, it was error to overrule the defendant's plea of the statute of frauds. The allegations as to the unenforceable promise of the defendant to become a citizen of this country should have been stricken from the record.

5. In grounds 6 and 8 of her special demurrers to paragraph 6 (d) of count 1, and grounds 20 and 22 of her special demurrers to the same paragraph of count 2, the defendant attacks the allegations which relate to the purchase of a diamond brace-

let by the defendant, and the allegation that the plaintiff would have been legally obligated to pay the balance of the purchase price. No facts are set forth in the paragraphs demurred to, or elsewhere in the petition, to show that the defendant would have been obligated to pay the remainder of the purchase price, and the allegation that he was so obligated stated no more than the conclusion of the pleader and should have been stricken.

Ground 9 of the special demurrers attacks the allegations in paragraph 6 (e) of count 1, and ground 23 attacks the same allegations in count 2. These grounds of special demurrer were improperly overruled. The allegations attacked by demurrer, relating to acts and conduct of the defendant in 1954, show that the plaintiff continued to live with the defendant, and the acts complained of (even if otherwise germane as acts of cruel treatment) were condoned and forgiven by the plaintiff by continuing to live with the defendant for a number of years thereafter.

In paragraph 6 (h) of counts 1 and 2 of the petition, as amended, the plaintiff alleged that before the defendant left Sapelo Island, and later during the summer while in France, "she revealed that she wished to receive from Mr. Reynolds a sum of money in excess of two million dollars in consideration of her not resisting his efforts to obtain a divorce from her, which demand on her part he rejected and refused to yield to." This allegation is attacked by paragraph 11 of the special demurrers to count 1 and paragraph 25 of the special demurrers to count 2, upon the ground that the allegation relates to an alleged offer of compromise, is highly prejudicial, and has no legal bearing on the issues in the case.

A husband and wife may not by contract promote a dissolution of their marriage. Such an agreement is against public policy and is null and void, and a purported compromise or attempt to compromise as to an amount of money to be paid to the wife to allow the husband to procure an uncontested divorce can not constitute either valid grounds for a divorce or a defense to the wife's claim for alimony. Such negotiations between a husband and wife would not be germane to a divorce petition subsequently filed by the husband based upon the ground of cruel treatment, and could only serve to prejudice the wife's response seeking alimony.

The rulings made in this division pertain to the ninth assignment of error in the bill of exceptions.

6. In the third amendment to the allegations of paragraph 11 of count 1 the plaintiff pleaded a prenuptial agreement between the parties, and a copy of the agreement is attached to this amendment, which was allowed on March 4, 1960. Subsequently the defendant renewed ground 12 of her special demurrer, which attacked a prenuptial agreement between the parties. The overruling of ground 12 of her special demurrer to count 1 and ground 26 to count 2, attacking the prenuptial agreement, is assigned as error in the ninth assignment of error in the bill of exceptions. In the tenth assignment of error in the bill of exceptions the defendant complains of the overruling of grounds 29 through 37, inclusive, of her special demurrers, which likewise attacked the prenuptial agreement as to count 1 of the petition as amended, and the overruling of her special demurrers 45 through 53 as to count 2 of the petition as amended, which likewise attacked the prenuptial agreement.

Paragraphs 1 and 2 of the prenuptial agreement, attached to and made a part of the plaintiff's third amendment, provide as follows:

"1. Mr. Reynolds heretofore and on May 19, 1952, created a trust with Montreal Trust Company, Winnepeg, Manitoba, Canada, as trustee, and delivered to said trustee in trust ten thousand (10,000) shares of Reynolds Tobacco Company 'B' common stock, which said trust provides for payment of one-half of the net income thereof to Mrs. Greenough [now Mrs. Reynolds] and one-half of the net income thereof to 'her mother, Mrs. Eleanor L. Marston, for and during their respective lives, with the entire income thereof payable to Mrs. Greenough during her lifetime after the death of her said mother.

"After the marriage is solemnized between the parties and on or before January 1, 1953, Mr. Reynolds agrees to pay to Mrs. Greenough the sum of ten thousand ($10,000) dollars in cash or marketable securities (at their then market value), or both.

"2. In consideration of the foregoing provisions made and to be made by Mr. Reynolds for her benefit, Mrs. Greenough hereby waives, releases, renounces, and discharges any and all right,

title, interest or claim whatsoever which she may acquire in the property, of Mr. Reynolds by reason of the marriage, including specifically, but not by way of limitation, (a) any right or claim to support, maintenance or alimony from Mr. Reynolds during his lifetime, except that in the event of a divorce being entered at any time in any action for divorce between the parties Mr. Reynolds agrees to pay to Mrs. Greenough as alimony and in full of her support and maintenance an amount not exceeding fifteen thousand ($15,000) dollars per annum from and after the date of any such divorce decree and until the death or remarriage of Mrs. Greenough, whichever event shall first occur, if divorce decree entered within five years of the marriage and if thereafter then for the lifetime of Mrs. Greenough, and (b) any right of dower or any other statutory right which by reason of the marriage would accrue to her in the real or personal property of Mr. Reynolds now owned or hereafter owned or acquired by him."

The prenuptial agreement between the parties in the present case should have been stricken from the petition on special demurrer, since it was wholly void. In *Birch v. Anthony,* 109 Ga. 349 (34 SE 561, 77 ASR 379), the rule was stated by this court as follows: "A contract between husband and wife made with the intention of promoting a dissolution of the marriage relation existing between them is contrary to public policy, illegal and void, and will not, after the husband's death, bar the widow's right to a year's support and dower." See also *Sumner v. Sumner* 121 Ga. 1 (48 SE 727); *Watson v. Burnley,* 150 Ga. 460 (104 SE 220); *Powers v. Powers,* 158 Ga. 251 (123 SE 220); *Don v. Don,* 158 Ga. 254 (123 SE 268); *Sells v. Sells,* 206 Ga. 650 (58 SE2d 186); *Beverly v. Beverly,* 209 Ga. 468 (74 SE2d 89); *Allen v. Withrow,* 215 Ga. 388 (110 SE2d 663).

In grounds 73, 79, and 81 of her amended motion for new trial the defendant assigns error on the order of the court overruling her motion for a mistrial based on improper remarks of counsel before the jury pertaining to the prenuptial agreement. The prenupital agreement being void, as ruled by the trial court, being in contravention of the public policy of the State, it was not a proper subject matter for comment by counsel before the jury. Since a new trial is otherwise granted, no ruling is required

on her motion for mistrial. It will be presumed that counsel on a subsequent trial will not violate the ruling of this court, and that the void prenuptial agreement will be eliminated in its entirety.

In ground 76 of her amended motion for new trial the defendant contended that the court erred in admitting the void prenuptial agreement in evidence. In grounds 108, 109, 110, and 111, the defendant assigns error on the charge of the court that the prenuptial agreement was unenforceable being in violation of the public policy of this State, that it was admitted in evidence for the sole purpose of "shedding some light upon the income and separate estate of the defendant wife," and that the jury should consider the prenuptial agreement solely for such purpose.

It has been insisted by counsel for the plaintiff that while the prenuptial agreement was void as a bar to alimony by the wife, it was admissible in evidence to show the consideration she received under the agreement for the purpose of showing her separate estate, and counsel cite *Powell v. Powell,* 196 Ga. 694 (27 SE2d 393); *Moss v. Moss,* 200 Ga. 8 (36 SE2d 431); and *Brown v. Brown,* 210 Ga. 233 (78 SE2d 516), in support of this contention. In the *Powell* case and the *Moss* case the wife was seeking alimony, and the husband sought to set up a separation agreement as a bar to the alimony. In each case there had been a voluntary cohabitation after the separation agreement, and this court held that the subsequent cohabitation voided the separation agreement, and that the wife did not have to restore the consideration under the agreement in order to obtain alimony. The statement was made in the *Powell* case, and quoted in the *Moss* case, that in awarding alimony the court would take into consideration, among other things, the separate estate of the wife "including the consideration, or what remained thereof, paid under the former agreement." However, no question was made in either case as to the admissibility in evidence of the void agreement, and the only issue on the agreement was whether or not it was a bar to alimony. It was held in each case that the agreement was void and would not be a bar to alimony. The *Brown* case quoted from the *Powell* case, but the *Brown* case

involved a former judgment for alimony and not a separation agreement.

The agreement introduced in evidence in the present case was not a separation agreement such as that dealt with in *Powell v. Powell*, 196 Ga. 694, supra, and *Moss v. Moss*, 200 Ga. 8, supra, which separation agreements were legal until voided by the subsequent resumption of their marriage relation by the parties. The prenuptial agreement entered into by the parties in the present case was void from its inception, and every provision in it was void. In *Birch v. Anthony*, 109 Ga. 349, supra, it was said: "This provision renders the whole contract illegal, as it is well settled that a contract intended to promote a dissolution of marriage is contrary to the policy of the law, illegal and void." There is no merit, therefore, in the contention of counsel for the plaintiff that the objection to the admission of the evidence should have been only to the void provisions of the contract. The agreement was wholly void as being against public policy, and the objection on that ground was sufficient.

It is strenuously urged that the agreement was admissible for the limited purpose of showing the separate estate of the defendant. As ruled in division 19 of this opinion, the gift of $10,000 in August, 1952, could not properly be considered by the jury on the question of the defendant's separate estate. The trust set up for her prior to their marriage, which was recited in the prenuptial agreement, was admitted in evidence, and it was not necessary to admit the prenuptial agreement in evidence to show this item as a part of the defendant's separate estate.

The trial judge charged the jury that the agreement was admitted in evidence for the sole purpose of "shedding some light upon the income and separate estate of the defendant wife." Since the agreement provided an amount of money which the plaintiff promised to pay the defendant in the event of a divorce between the parties, the jury might well have assumed that this was "income" which the defendant would receive after divorce, and the charge of the court could have been understood by the jury to invite their consideration of the very provision of the agreement which rendered the whole agreement void.

It was error to admit the void agreement in evidence for any

purpose, and the charge of the court in connection therewith was erroneous, prejudicial, and harmful to the defendant.

7. In ground 15 of her special demurrers the defendant attacked the allegation of paragraph 11 (e) of count 1 (and in ground 28, the same allegation in count 2) that: "And . . . by virtue of these gifts, contributions, purchases, and allowances, defendant has been amply provided for and is not entitled to any further support, alimony or contribution from him." It is insisted that this allegation constitutes an unwarranted conclusion of law by the pleader to the effect that gifts made to a wife while living together during marriage constitute alimony and support, that such conclusion is erroneous, and the defendant is entitled by law to continued support from the plaintiff at the economic level at which he maintained her while they were living together.

Generally, a wife is debarred from collecting alimony from her husband only when she has abandoned him without just cause (*Bulloch v. Bulloch*, 188 Ga. 699, 4 SE2d 630), or when she has been guilty of adultery (*Williams v. Williams*, 114 Ga. 772, 40 SE 782; *Long v. Long*, 147 Ga. 771, 95 SE 676), neither of which grounds is asserted or relied upon by the plaintiff in the present case. Gifts from a husband to a wife during marriage do not, as a matter of law, debar the wife's claim to alimony. If such gifts are sufficiently large to provide amply for the wife in the future after the divorce is granted, and in the manner in which she was maintained by her husband during marriage, such gifts may be considered by the jury on the question of the amount of alimony to be awarded to the wife, and if it be determined that ample provision has been made for her, under the rule stated, the jury may reject her claim for alimony.

Whether or not the pleaded facts upon which the plaintiff relies to debar the defendant's claim of alimony were sufficient to show such a separate estate as would maintain her in the future in the manner in which she was maintained by the plaintiff during their marriage was a question for the jury on the issue as to permanent alimony, and for the court on the issue as to temporary alimony. The assertion that she was not entitled to alimony from the plaintiff was limited to the facts pleaded, and this issue

would ultimately be for determination as herein stated. No error is shown by the order overruling these grounds of special demurrer.

8. By ground 44 of the special demurrers the defendant attacked the allegations in paragraph 11 of count 1, and by ground 60, the same allegations in count 2, of the petition as amended that: "and in view of the acts of misconduct which she has been guilty of, as referred to in said petition, originally and/ or as amended, she is not entitled to further support, alimony or maintenance from him." The exception here is controlled by the rulings in division 7 of this opinion.

9. The court abused its discretion in denying the defendant's application to visit the home on Sapelo Island where the plaintiff and the defendant had been living, under such reasonable provisions for the protection of the plaintiff as the court might have imposed. On January 4, 1960, the plaintiff filed his response to her application in which he stated as follows: "that to the best of his information and belief there are no properties, articles, clothing, or personal effects of the said Muriel M. Reynolds on said Island or in the residence occupied by the plaintiff. However, plaintiff is having a search made of said premises and any articles or effects found therein will be forwarded to the residence at Palm Beach, Florida, where they will be available for her, the packing and cost of transmitting the same being borne by the plaintiff." On January 13, 1960, the plaintiff filed a further response in which he stated in part. "That he has caused a search to be made of the premises on Sapelo Island, Georgia, and particularly the residence which belongs to him and occupied by him, and that all articles of value therein, in addition to those heretofore removed, have been delivered to the court by delivering the same to Sheriff Tom Poppell in his office at Darien, Georgia, and he is in possession of the same."

Neither response of the plaintiff alleged any lawful or valid reason why the defendant should not personally remove her possessions from her former home on Sapelo Island, and in the absence of such valid or lawful reason, the court erred in refusing her request to obtain possession of her personal property.

10. In the 13th, 14th, and 15th assignments of error in the

bill of exceptions, and in grounds 4, 5, 6, and 7 of the motion for new trial, as amended, the defendant assigns error on the judgments of the court overruling her motions for a continuance. The judgment of the trial court denying the motion for new trial being otherwise reversed, the judgments denying the motions for continuance are now moot, and no ruling on the denial of the motions will be made. *Code* § 6-701, as amended.

11. The 17th assignment of error in the bill of exceptions is upon the court permitting, over the defendant's objections, the case to go to trial and a verdict and judgment to be rendered against her, without the plaintiff having testified orally either by deposition or before the jury. She contends that she tried diligently to obtain the oral testimony of the plaintiff under cross-examination by deposition and before the jury, and that she was not allowed by the court to obtain such testimony. It is insisted that the court erred in permitting a verdict and judgment to be rendered without the plaintiff having given oral testimony under cross-examination.

The interrogatory procedure wherein the plaintiff purported to give his testimony being void, there was insufficient competent testimony to make an issue on the question as to whether or not the jury would be authorized to grant a divorce on the ground of cruel treatment, and this issue was improperly submitted to the jury.

12. In her 18th, and final, assignment of error in her bill of exceptions the defendant assigns error on the award of temporary alimony by the court in the amount of $1,042 per month. At the time the temporary alimony award was made, the court, by appropriate orders, had continued the question of temporary alimony until after the trial and after hearing the evidence that was introduced before him on the trial.

Stratton Coyner, an attorney and certified public accountant, who had been employed by the plaintiff since 1932, testified on cross-examination: "Q. The $100,000.00 joint account called 'Household' didn't have anything to do with the $60,000.00 on the average that you pay per year for, for maintenance of their various homes? A. That's right. Q. So there was $160,000.00 per year that Mrs. Reynolds used in paying bills,

taking care of herself during the course of their marriage? A. I don't know how much she spent of the $100,000.00 that she, that was put in that account."

The same witness, testifying as to the income of the plaintiff, stated that in the year 1958 the plaintiff had capital gains of $6,040,000, out of which he paid $1,500,000 in taxes; that his capital gains in 1957 were approximately $1,600,000, on which he paid income taxes in the amount of $400,000; that in 1959 the plaintiff made charitable contributions of $1,033,143.22; and in 1958 his charitable contributions were $1,019,905.77. The same witness testified that the plaintiff's adjusted gross income in 1957 was $1,216,299.87. It further appears from the testimony of the plaintiff's accountant that the plaintiff is in the 91% Federal income tax bracket. It was admitted that the plaintiff is worth $25,000,000. The defendant testified that the plaintiff spent upon her during the years of their marriage approximately $250,000 each year. As to the defendant's net worth, counsel do not seem to agree. It appears that her net worth may be within the range of $404,000 to $478,000.

Generally, as to temporary alimony, where the husband sues the wife for divorce on the ground of cruel treatment, and the wife files a response seeking alimony, it is the rule to award the wife temporary alimony and attorney's fees. "Temporary alimony and counsel fees are awarded to afford the wife the means of contesting all of the issues between herself and her husband, where a suit for divorce is filed by the husband and a cross-action is filed by the wife asking for alimony and attorney's fees and denying the right of the husband to divorce." *Lee v. Lee*, 154 Ga. 820 (115 SE 493); *Powers v. Powers*, 158 Ga. 251, supra; *Chapman v. Chapman*, 162 Ga. 358 (133 SE 875); *Moody v. Moody*, 193 Ga. 699, 703 (19 SE2d 504); *Twilley v. Twilley*, 195 Ga. 297, 299 (24 SE2d 46).

We have not undertaken to set forth all of the facts and figures before the court at the time the award of temporary alimony was made. From the foregoing it appears that the amount awarded is wholly insufficient to either maintain the defendant in the manner and custom in which she was maintained by the plaintiff (*Wills v. Wills*, 215 Ga. 556 (3, 4), 111 SE2d

355) or to adequately enable her to contest the issues between her and her husband. We take cognizance of the fact that a separate award was properly made for counsel fees and expenses. *Code* § 30-202; *Alford v. Alford*, 189 Ga. 630 (7 SE2d 278). Since temporary alimony continues when awarded (unless revised by the court) until the final termination of the cause (*Aud v. Aud*, 199 Ga. 714, 35 SE2d 198), the trial court should revise the award in the present case more reasonably in accord with the testimony in the case.

Ground 112 of the amended motion for new trial assigns error on the amount of permanent alimony awarded by the jury. Since the competent testimony on the issue as to the right of the plaintiff to have a divorce was insufficient to sustain the granting of a divorce (see division 11 of this opinion), there was no issue properly before the jury except the question as to the right of the defendant to have alimony awarded her in accord with the manner in which she had been supported and maintained by the plaintiff during marriage. Under the testimony of the plaintiff's witness, Stratton Coyner, the amount awarded by the jury was substantially insufficient to maintain the defendant in the manner in which she had been maintained by the plaintiff.

13. In ground 8 of her amended motion for new trial the defendant assigns error on the order of the court denying her written motion to disqualify the panel of jurors. In ground 9 she assigns error on the judgment of the court overruling her motion for a mistrial based upon the alleged unlawful jury impaneled from which the parties must select the trial jury. The basis of the defendant's attacks is that the jury commissioners in revising the jury lists in 1958 did not use the book of tax returns of the tax receiver.

With reference to the revision of the jury lists, *Code* § 59-106, as amended, Ga. L. 1955, p. 247, provides in part: "Biennially, or, if the judge of the superior court shall direct, triennially on the first Monday in August, or within 60 days thereafter, the board of jury commissioners shall revise the jury lists. The jury commissioners shall select from the books of the tax receiver upright and intelligent citizens to serve as jurors. . ."

While the evidence is not without uncertainty as to how the revision in 1958 was made, whether from a former list, or the knowledge of the commissioners, the testimony of Harvey J. Holland and Ses Driggers, two of the jury commissioners, was sufficient to show that the books (digests) of the tax receiver were not used. Independently of this testimony, however, a finding was demanded that the tax digest was not used, since it was established that 18 of 60 members drawn for jury service at that term of court were not on the tax digest. The judge of the superior court eliminated the names of the 18 jurors whose names were not on the tax digest from the panel from which the jury was chosen. The names of the remaining jurors appeared on the tax digest as required by law.

The language of *Code* § 59-106, as amended, is mandatory, and the commissioners should have selected the names of citizens from the tax digest to compose the jury list. The jurors actually put upon the defendant may have been originally selected from the tax digest. It is not contended that the jury was not as fair and impartial as any jury which might have been obtained in the county. There is no intimation of misconduct or unfairness, or the expression of any bias or prejudice against the defendant. As heretofore stated, however, the statute is mandatory and permits no exceptions. The court erred in overruling grounds 8 and 9 of the amended motion for new trial.

14. In ground 82 of her amended motion for new trial the defendant assigns error on the judgment of the court overruling her motion for a mistrial, based upon two letters read in the presence of the jury by Judge Frank M. Scarlett. The grounds of this motion were in part as follows:

"(a) Plaintiff called, as a character witness, Judge Frank M. Scarlett, United States Judge for the Southern District of Georgia, over movant's objection that testimony as to plaintiff's general character was irrelevant and immaterial, there being no issue in this case concerning plaintiff's general character in the community.

"(b) Upon Judge Scarlett's taking the witness stand, in the presence of the jury, the following occurred on direct examination by plaintiff's counsel (transcript of evidence, p. 98): Q.

Judge, do you know ·Mr. Richard J. Reynolds? A. I certainly do. May I read this letter first? Q. You could, yes, sir. A. Judge I think I should read this to counsel not that it makes much difference but it might account for my connection with the Reynolds; and my son is his counsel and I thought before I gave my testimony I brought this letter to read.'

"(c) Movant's counsel immediately stated as follows: 'Your Honor, I want to state that there is no, not the slightest implication of an impropriety in Judge Scarlett testifying in this case, if he desires to do so, no impropriety at all.'

"(d) Nevertheless, Judge Scarlett stated to the court: 'I want to read this letter, for the record, if I may, please, sir'; and the court expressly allowed him to do so.

"Then in the presence of the jury the witness, Judge Scarlett, read said letters, as follows: [Then follows a letter from the witness to Judge Rives, Chief Judge of the United States Circuit Court of Appeals, and the reply of Judge Rives.] . . .

"(g) Neither of said letters nor their contents was admissible in evidence, the first of said letters containing this following irrelevant, immaterial and highly prejudicial comment written by Judge Scarlett: 'Reynolds' Foundation has done lots for this section and he has an enviable war record'; and the second containing the following irrelevant, immaterial and highly prejudicial comment written to Judge Scarlett, the witness, by Judge Rives: 'Judging from your letter, you have been closely associated with Mr. Reynolds and you are in excellent position to testify as to his reputation and character.'

"(h) Immediately after the witness was excused and before the jury retired to consider their verdict, movant made the following motion: 'Your Honor, I would like to move for a mistrial on the grounds that Judge Scarlett read in the record a letter purportedly written by his superior, Judge Rives, relating to the propriety of his appearance here, after we had informed the Judge and informed the court that we did not question the propriety of his appearance here at all. The letter, the copy of the letter, referring not to the propriety of the act of testifying, which was unquestioned, but refers to the things that Mr. Reynolds has done in this community and done for this community.

We think that those references were obviously prejudicial and intended to inflame and influence the jury in this case and we move for a mistrial on that ground.'

"(i) The court expressly overruled movant's said motion for mistrial, although the court had previously ruled on movant's special demurrer that plaintiff's war record was irrelevant to any issue in this case.

"(j) The court gave no instructions to the jury to disregard the said letters and the irrelevant, immaterial and prejudicial comments contained therein.

"(k) Movant shows that the reading in the presence of the jury of said inadmissible letters was a material error, highly prejudicial and harmful to movant, in that plaintiff thereby brought to the attention of the jury the following inadmissible and highly prejudicial matters: (1) plaintiff's war record; (2) plaintiff's benefactions, through his Foundation, to McIntosh County and the residents of said county, including the jurors; and (3) the *ex parte* statement of Judge Rives, who was not a witness, that the witness, Judge Scarlett allegedly was well qualified to testify as to plaintiff's reputation and character.

"(l) The court's error in overruling movant's motion for mistrial was prejudicial error, which could not be and was not cured by the charge of the court."

Generally, where a judgment overruling a motion for new trial is reversed, it is not necessary to rule on grounds of a motion for mistrial. In the present case, in order that there may be no recurrence of the error here complained of on a retrial of the cause, it is proper that the motion for mistrial should be considered. In addition to the statements quoted from the letters referred to, the letters contained other irrelevant, immaterial, and highly prejudicial statements. Whether the court by instructions might have removed from the minds of the jury the damaging effects of such prejudicial statements is not involved. No instructions were given. The letters could serve no purpose but to prejudice the jury in favor of the plaintiff, and against the defendant on her claim for alimony. It was error to overrule the motion for a mistrial.

15. In grounds 83, 84, 85, and 86 of the amended motion

for new trial the defendant assigns error on the ruling of the court permitting named witnesses to testify as to the general character of the plaintiff. These grounds are without merit. The defendant had charged the plaintiff with cruel treatment and her allegations were such as to reflect upon his character. In such instances character evidence is not improper. *Code* § 38-202; *McNabb v. Lockhart & Thomas*, 18 Ga. 495 (11); *DuBose v. DuBose*, 75 Ga. 753; *Montgomery v. Montgomery*, 180 Ga. 120 (177 SE 337); *Gaulding v. Gaulding*, 184 Ga. 689, 691 (3) (192 SE 724); *Hogan v. Hogan*, 196 Ga. 822 (28 SE2d 74).

16. In ground 87 of the amended motion for new trial the defendant assigns as error an alleged improper remark of counsel for the plaintiff. It is contended that counsel referred to evidence which the court by a prior ruling had excluded, this evidence pertaining to certain payments or checks made payable to the mother of the defendant. The remark assigned as error is as follows: "The checks to the mother are made part of this exhibit; the court has ruled that we will be concerned with—" At this point the defendant's counsel interrupted and made the motion for mistrial.

The statement assigned as error is too incomplete to invoke any ruling by this court. Counsel could have completed his remark with the statement "only the checks or amounts received by the defendant," or in other language might have indicated that the evidence the court had ruled out was not before the jury. On a retrial of the cause counsel for the plaintiff should not undertake to argue matters to the jury that the court has excluded.

17. In ground 88 of the amended motion for new trial error is assigned on the order of the court overruling the defendant's motion for a physical examination of the plaintiff, made on May 12, 1960, immediately after the plaintiff had closed. It was recited in the motion: "Since the commencement of this trial, plaintiff's doctors have testified to the effect that plaintiff is too sick to come to court to testify, but indicating that the duration of his disability will coincide with the termination of this trial, which matter needs impartial exploration."

The plaintiff having elected to submit his testimony by inter-

rogatories, which procedure was void, and the court having heard testimony submitted at the outset of the trial as to the plaintiff's physical condition, it was not an abuse of discretion for the court to overrule the motion for further physical examination.

18. Error is assigned in ground 89 of the amended motion for new trial on the order of the court overruling the defendant's motion for a special session of the court in the home of the plaintiff on Sapelo Island. The overruling of the defendant's motion for a special session of the court on Sapelo Island in the home of the plaintiff was not error.

19. In ground 90 of the amended motion for new trial it is contended that the court erred in admitting testimony that the defendant received certain wedding gifts in August, 1952. In ground 91 it is insisted that the court erred in admitting in evidence testimony that she wired a bank in August, 1954, in the name of Richard J. Reynolds, and had $25,000 wired to her in Stockholm, Sweden. In ground 92 error is assigned on the admission in evidence, on the cross-examination of the defendant, of testimony as to her bank account and the amount she had on hand at the time of the trial. In ground 93 it is insisted that the court erred in admitting in evidence a blackboard prepared by counsel for the plaintiff, purporting to show the separate estate of the defendant.

Ground 92 does not show reversible error for any reason assigned.

Gifts received at the time of her marriage in August, 1952, and an amount received in August, 1954, can not be presumed to be in the possession of the defendant in May, 1960. Evidence of amounts received or in the possession of the defendant in 1954, and prior thereto, is too remote to be germane with reference to the separate estate of the defendant in 1960, and it should have been excluded from the evidence.

Generally, counsel are authorized to draw conclusions from the evidence introduced, it being a question for the jury to determine whether or not the conclusions drawn may be supported by the evidence. Where the conclusions of counsel are based upon evidence improperly and erroneously admitted, the conclusions are likewise erroneous. The court erred in admitting the black-

board in evidence, since the figures placed thereon by counsel were based in part on evidence improperly and erroneously admitted. The court erred in overruling grounds 90, 91, and 93.

20. In ground 94 of the amended motion for new trial error is assigned on the refusal of the court to give a written request of the defendant to charge the jury. This charge was not entirely adjusted to the evidence, and was in part argumentative. The court did not err in refusing this request to charge.

21. In ground 95 of the amended motion for new trial error is assigned on the refusal of the court to give in charge to the jury the following written request of the defendant: "Gentlemen of the jury I charge you that if you should find from the evidence in this case that the parties to this action are guilty of like misconduct it shall be your duty to enter a verdict denying a divorce. And I charge you further that all acts of cruelty, of whatever nature, constitute like conduct within the contemplation of law."

The request to charge was adjusted to the pleadings, the evidence, and the law, and the failure to charge as therein requested demands the grant of a new trial. *Code* § 30-109; *Moon v. Moon*, 216 Ga. 627 (3) (118 SE2d 473); *Brackett v. Brackett*, 217 Ga. 84 (121 SE2d 146). The ruling herein is controlling as to grounds 96 and 97 which are based upon the failure to charge on "like conduct."

22. In ground 98 the defendant assigns error on the following charge of the court: "I charge you further, that cruel treatment may consist of nagging, abusing, cursing, insulting and humiliating the plaintiff in this case, speaking depreciatingly of him, his family, his friends, his guests, his servants, his country, humiliating and embarrassing him, any one or more of which would be sufficient to authorize a divorce if in your opinion one or more of them was wilfully done with the deliberate intention of causing him mental pain and suffering."

Generally, a single act of personal violence is not considered cruel treatment. *Phinizy v. Phinizy*, 154 Ga. 199 (114 SE 185); *Hilburn v. Hilburn*, 210 Ga. 497, 500 (81 SE2d 1). A severe and atrocious act of cruel treatment accompanied by circumstances indicating a probability of repetition may authorize a di-

vorce. *Phinizy v. Phinizy,* supra. None of the acts outlined in the charge excepted to here is of a severe or atrocious character. The court erred in charging that any one of the acts referred to in the charge would authorize the granting of a divorce.

23. In ground 99 of the amended motion for new trial error is assigned on that portion of the charge wherein the court instructed the jury that if certain acts were done by the defendant with the intention on her part "to wound, torment, vex, or afflict and which actually afflicted or tormented the husband, you would be authorized and *it would be your duty to grant him the divorce which he seeks in this case, etc.*" (Italics ours.)

"It is never the *duty* of the jury to find for a divorce, but they *may* and are *authorized* to do so where the evidence establishes the ground upon which the action is brought." *Brackett v. Brackett,* supra. The charge excepted to was erroneous, prejudicial, and contrary to law, and requires the grant of a new trial.

24. "A request to charge the jury must be legal, apt, and precisely adjusted to some principle involved in the case, and be authorized by the evidence." *Spain v. Spain,* 203 Ga. 411 (2) (47 SE2d 279). Under the foregoing rule, the failure of the court to charge the request set out in ground 100 of the amended motion for new trial was not error.

The court did not err in refusing the request to charge in ground 106.

25. In grounds 101, 102, 103, 104, and 105 of the amended motion for new trial the defendant excepts to extracts from the charge of the court with reference to the defendant establishing her contentions "by a preponderance of the evidence" as related to "her right to alimony from the plaintiff."

Generally, the burden is upon one who asserts a fact to establish it by competent evidence. Where the jury in the exercise of its discretion grants to a husband a divorce upon the ground of cruel treatment, it is not essential to the jury's discretion in awarding alimony to the wife that she has established any of the allegations of her response which charge the husband with cruel treatment. In all cases where the husband is granted

a divorce on the ground of cruel treatment it is for the jury to say whether or not they will grant alimony to the wife. *Lowry v. Lowry,* 170 Ga. 349, 351 (153 SE 11, 70 ALR 488); *Crenshaw v. Crenshaw,* 197 Ga. 767 (2) (30 SE2d 480); *Corr v. Corr,* 213 Ga. 699, 701 (100 SE2d 922); *Shivers v. Shivers,* 215 Ga. 536, 539 (111 SE2d 376).

The extracts from the charge herein assigned as error were not in accord with the decisions of this court, and were erroneous.

26. In ground 107 exception is taken to the following charge of the court: "I charge you further, gentlemen of the jury, that you should not consider as having any evidentiary force, effect or value whatsoever, any statement or statements made by the court, or any statement or statements, colloquy or argument made by either or any of the lawyers on either side during the trial of the case, and you should wholly eliminate from your minds and consideration any and all such statement or statements, arguments or colloquies in your consideration and determination of this case and the evidence, and you should arrive at and base your verdict in this case wholly and entirely from and upon the evidence adduced and submitted to you for your consideration during the trial of this case. Such arguments and colloquies are by-words between counsel in this case and are not to be considered by you in any way whatsoever."

The charge is subject to two constructions: (1) that the jury should not consider the arguments of counsel or colloquy of counsel with the court during the progress of the trial; and (2) that the jury should not consider "arguments made by either or any of the lawyers on either side during the trial of the case." This language is susceptible of the construction that the jury should not consider the arguments of counsel made to the jury at the conclusion of the introduction of evidence. Being reasonably susceptible of this latter construction, the charge was erroneous. It is the right of litigants to be represented by counsel at all stages of the trial, and argument of counsel to the jury is not only a right, but a substantial one. *VanDyke v. Martin,* 55 Ga. 466; *Madison v. Montgomery,* 206 Ga. 199 (56 SE2d 292).

27. The interrogatory procedure wherein the plaintiff purportedly gave certain testimony being void, there was insufficient

competent testimony to support the verdict for divorce in favor of the plaintiff. The general grounds of the motion for new trial therefore require that the judgment denying a new trial be reversed.

Grounds 14 through 52 of the amended motion for new trial were not included in the grounds filed in this court, and no ruling can be made as to these grounds.

For the reasons stated in divisions 1, 2, 3, 4, 5, 6, 9, 11, 12, 13, 14, 19, 21, 22, 23, 25, 26, and this division of the opinion, the judgment denying the motion for new trial, as amended, is reversed.

*Judgment reversed. All the Justices concur. Mobley and Grice, JJ., concur in the judgment but not in all that is stated in the opinion.*

GRICE, Justice, concurring specially. Although I agree with the majority opinion that the judgment should be reversed, I do not agree with all that was said there. Therefore, I feel it my duty to give my views as to those rulings with which I disagree.

1. Division 1 of the opinion rules that the following extract from the court's order setting a pretrial conference is error: "In the meantime all matters pending for a hearing in said case and cause of action, including the motion to modify the restraining order, the notice to take the depositions of the plaintiff, and the notice to produce certain records, documents, transactions, etc., are hereby postponed and continued, and held in abeyance until after said pretrial conference of said attorneys and until the further notice of this court."

The reasons given by the majority opinion for holding this portion of the order erroneous are that "The act of 1953 (Ga. L. 1953, Jan.-Feb. Sess., p. 269; *Code Ann.* §§ 81-1013, 81-1014) . . . does not directly, or by inference, confer upon the judge of the superior court any power to vacate, modify, or set aside valid proceedings pending in the cause in which such pretrial conference is set by the court." And, further, that the above quoted portion of the order was "without motion seasonably made, without notice, was without any cause shown by the plaintiff or his counsel" as required by *Code Ann.* § 38-2105(b) (Federal Rule 30(b)).

As I view what occurred in this respect, the court's order was

not contrary to any of the statutes named. It merely postponed, continued, and held in abeyance those matters specified therein, so that they could be properly determined.

The pretrial conference statute, *Code Ann.* §§ 81-1013 and 81-1014, was not violated. This order preserved the status quo of increasingly complex litigation until the court could confer with the parties' attorneys in an effort to aid in the disposition of the action, as envisioned by *Code Ann.* § 81-1013. The authority given by that section to direct pretrial conferences would be of little practical value if the proceedings for consideration could not be stayed pending the conference.

Nor was the order violative of *Code Ann.* § 38-2105 (b) (Federal Rule 30(b)). That section provides: "After notice is served for taking a deposition by oral examination, upon motion seasonably made by any party or by the person to be examined and upon notice and for good cause shown, the court in which the action is pending may make an order that the deposition shall not be taken, or that it may be taken only at some designated place other than that stated in the notice, or that it may be taken only on written interrogatories, or that certain matters shall not be inquired into, or . . . [etc.]" Obviously, that section contemplates an order of finality, not one merely suspending proceedings until the proper procedure can be ascertained. The order here staying the specified proceedings pending the pretrial conference was of the latter type. Subsequently to the conference, in which counsel for both parties participated, these matters went forward, a final order being made as to the matters which the order under consideration had suspended.

Therefore, as I view it, this order was not erroneous.

2. The third division of the opinion holds, as I understand it, that the interrogatory procedure was void because of each of the following: (i) a party may not take his own written interrogatories for use as evidence in a pending action; (ii) the exclusion of defendant and her attorneys from the taking of plaintiff's own interrogatories prohibited their use upon the trial; (iii) a plaintiff in a divorce action cannot establish his case by written interrogatories, under the facts existing here; and (iv) the defendant was denied the right of cross-examination by not being allowed to orally cross-examine the plaintiff.

I agree with the result that the interrogatory procedure was void, but I disagree with three of the four bases upon which it appears to be predicated. The rulings referred to in numbers (i), (iii) and (iv) above are, in my opinion, erroneous.

(a)  As to number (iv) above, I agree that the defendant's right of cross-examination was abridged and that such abridgment voided the interrogatory procedure, even if otherwise valid. My reasons for viewing the events here as constituting abridgment, however, are not the same as those of the majority. A number of the answers given by the plaintiff to the defendant's questions appear to me to be evasive and for this reason, not the reason that the defendant was denied *oral* cross-examination, the plaintiff's own interrogatories should have been excluded.

My own study, observation and experience are in accord with the majority opinion's statements as to the advantages and importance of oral cross-examination. However, the right of cross-examination does not *always* include the absolute right to a cross-examination that is oral. In this connection, *Code Ann.* § 38-2105(b) (Federal Rule 30(b)) authorizes the judge, after notice is served for taking a deposition by *oral* examination, to order that it be taken only on *written* interrogatory, which was done here.

Also, *Code Ann.* § 38-2101(d) (3) (Federal Rule 26(d) (3)) provides that a party's own deposition (i.e., either oral or written interrogatories) may be used upon the trial for any purpose "against any party who was present or represented at the taking of the deposition or who had due notice thereof" if the court finds any one of six enumerated conditions exists (i.e., that the witness is dead, more than 100 miles from the place of trial, unable to attend due to illness, etc.). Important here is that the use of the party's own deposition as evidence upon the trial is *not* conditioned upon his being subjected to oral cross-examination at any stage of the action. The provisions of Rule 26(d) (*Code Ann.* § 38-2101(d)) expressly contemplate a situation such as existed here, where the judge found, from competent medical testimony by both parties' physicians, that the plaintiff was too ill to be subjected to oral examination, either cross or direct. In such cases § 38-2101(d) permits the party's own written interroga-

tories to be used although he is not orally cross-examined.

It follows that the interrogatory procedure was not void because the defendant was not allowed to orally cross-examine the plaintiff.

However, the failure of the plaintiff to answer responsively the questions put to him by the defendant did void the procedure. The right of cross-examination does include the requirement that the questions, whether oral or written, be answered responsively. Furthermore, *Code Ann.* § 38-2108 (Federal Rule 33), relating to interrogatories to adverse parties, requires that "The interrogatories shall be answered separately and fully. . ." Although there has been no case construing our new deposition-discovery statutes in this respect, a comparable result is found in *Howard v. Chamberlin, Boynton & Co.*, 64 Ga. 684(4): "Where a party to a cause makes himself a witness in his own behalf, he should be held to answer strictly and minutely every interrogatory of which he has knowledge, and if he neglects so to answer, or answers evasively, such testimony [his own] should be rejected."

I would have preferred to rest the ruling as to the interrogatory procedure on this ground alone, without reaching the other three grounds, as listed above.

(b) The ruling, referred to in number (i) above, that a party may not take his own testimony by written interrogatories for use as evidence in a pending action, is, as I see it, erroneous.

*Code Ann.* § 38-2101 (Federal Rule 26), entitled "Depositions pending action," in subsection (a) provides: *"Any party* may take the testimony of *any person, including a party,* by deposition upon oral examination or *written interrogatories* for the purpose of discovery *or for use as evidence in the action* or for both purposes." (Emphasis supplied.) Thus, § 38-2101 establishes that a party may take his own written interrogatories for use as evidence or for discovery and the fact that other rules enumerated in the majority opinion also provide for discovery is immaterial to the question here.

The import of the language quoted above is stated by Moore in his treatise on Federal Practice (vol. 4, 2nd ed., 1950): "Rule 26 is broad enough to permit a party to take his own deposi-

tion, since it provides that *any party* may take the testimony of any person, *including a party,* by deposition" (p. 1037), and "May a party introduce *his own* deposition as evidence at the trial? The rule provides that 'the deposition of a witness, *whether or not a party,* may be used *by any party for any purpose* if the court finds' [any one of the provisions enumerated in Rule 26(d), *Code Ann.* § 38-2101(d)]" (p. 1195). In the 1961 amendment to his treatise, Moore states: "Rule 26(a) gives a broad right to any party to take the testimony of any person, including a party, by oral deposition, pursuant to Rule 30, or by written interrogatories, pursuant to Rule 31, for the purpose of discovery or for use as evidence in the action or for both purposes." (p. 589).

The reported cases support this view. In Richmond v. Brooks, 227 F.2d 490 (2nd Cir., 1955), the opinion shows that at the trial in New York, plaintiff, a California resident, offered her interrogatories as her proof, but the court refused to receive it and later dismissed her action for failure of proof. The Court of Appeals, citing Rule 26(a) and (d), reversed such dismissal.

In Smith v. Morrison-Knudsen Co., 22 F.R.D. 108, the court observed: "The defendants also argue that the words 'any party' in F.R.C.P. 26(a) and 31, should be restricted to mean only an *adverse* party. There is no merit to that contention.

"Rule 26(a) explicitly reads: 'Any party may take the testimony of any person, *including a party,* by deposition upon oral examination or written interrogatories. . .' (Emphasis supplied.) Rule 31 explicitly reads: 'A party desiring to take the deposition of *any person* upon written interrogatories. . .' (Emphasis supplied.) On the other hand, Rule 33 is expressly limited by its terms to 'any *adverse* party.' (Emphasis supplied.)

"[1] The logical conclusion, dictated by the plain language of the rules, is that rules 26(a) and 31 apply to any person, including a party, while rule 33 applies only to an adverse party."

See, also, Fay v. United States, 22 F.R.D. 28; 28 U.S.C.A., Rule 26, commentaries, note 6, pp. 293, 294; Modern Federal Practice Digest (West Publ. Co.), "Federal Civil Procedure," key number 1324.

The majority opinion statement that "the sole definite pro-

vision contained therein [*Code Ann.* §§ 38-2101 through 38-2112; Federal Rules 26 through 37] for a plaintiff to take his own testimony is to be found in Rule 27 (§ 38-2102), entitled, 'Depositions before action or pending appeal' " (perpetuation of testimony), is thus contrary to the terms of Rule 26.

The reported cases stress that "The deposition-discovery rules must be broadly and liberally construed." 28 U.S.C.A., Rule 26, annotations 2.

My view is that the opinion is erroneous in this respect.

(c)  Another ground stated by the opinion, number (iii) above —that the plaintiff cannot by his written interrogatories establish his grounds for divorce—appears to me to be an innovation which is contrary to our law.

Regardless of what may be the practice in any other jurisdiction, such as the District of Columbia, I find no basis, either in statutes or decisions of the courts of this State for the holding made here. True, the law does and should hinder facility in the procurement of divorces. But it does not require any different method for presenting the evidence which authorizes the divorce. In fact, the legislature of this State has recently provided that "The same rules of pleading and practice applicable to ordinary civil actions, including those laws relating to the appearance day and the trial or 'return' term of cases shall apply to actions for divorce. . . ." (Ga. L. 1958, p. 315; *Code Ann.* § 30-113). It is easy to contemplate situations where one party to a marriage, who has sued for divorce, is, due to providential cause, unable to attend trial and thus cannot appear personally to establish a deserving case for divorce. Could it be soundly contended that under those circumstances his grounds could not be established by his written testimony read at the trial? If such were the rule, many miscarriages of justice would result, particularly where property rights are involved.

In this State, while there may be practices or customs obtaining in particular jurisdictions that parties present their evidence by personal appearance, it is a fact that literally thousands of valid divorces have been obtained through testimony taken either by oral depositions or written interrogatories. The holding here, as to the necessity for personal appearance, although

confined to the facts of the instant case, is a departure and is, in my view, unauthorized.

3. The fourth division decides that it was error to rule adversely upon the defendant's contentions that her alleged promise to become a citizen of the United States following their marriage was not in writing as required by the Statute of Frauds. It appears to me that the plaintiff was not relying upon this alleged promise as the basis of a contract in consideration of marriage. Intead, he was relying upon the alleged dissension between himself and the defendant on this subject as a part of her alleged cruel treatment. As I construe it, this was no place for a plea based on the Statute of Frauds and the trial judge was correct in ruling adversely to the defendant's contentions based upon it.

4. In the ninth division it is held that the trial court abused its discretion in denying the defendant's request to visit the home on Sapelo Island and that such denial was reversible error. Under the circumstances here, I see no abuse of discretion in continuing in force the restraining order. But in any event, the denial should not constitute reversible error since the rulings on this issue could not have affected the outcome of the case, which was over divorce and alimony.

5. In Divisions 11 and 27, the opinion holds that since the interrogatory procedure was void, there was insufficient competent testimony for consideration by the jury and for its verdict of divorce. However, as I evaluate the evidence, there was sufficient competent testimony by other witnesses, namely John Walter Gates, Stratton Coyner, Frank Durant and Christian Nissen. Therefore, even eliminating the plaintiff's testimony given by the interrogatories, there was sufficient evidence to create an issue for the jury and to authorize its verdict of divorce.

6. Division 12 holds that the temporary alimony was "wholly insufficient" and that the permanent alimony was "substantially insufficient."

As to temporary alimony, the trial judge, under *Code* §§ 30-202, 30-203 and 30-206, has discretion as to the amount to be awarded. Under repeated decisions, the rule is that his award must show an abuse of discretion before this court will interfere. Here, in view of all the facts and circumstances, in-

cluding the wife's large separate estate of between $300,000 and $400,000, no abuse appears to me.

As to permanent alimony, the holding is predicated on there being insufficient evidence to sustain the granting of the divorce, because of the previous ruling that the interrogatory testimony was not competent evidence. However, in view of there being other competent testimony, as referred to above, authorizing the divorce on the ground of cruel treatment, there was no absolute right of the defendant to have permanent alimony. In such case it is optional with the jury whether to award alimony. *Crenshaw v. Crenshaw*, 197 Ga. 767 (30 SE2d 480). Hence, the wife cannot complain of the amount awarded.

I would reverse the judgment but not for all of the reasons assigned by the majority opinion.

I am authorized to state that Mobley, J., concurs in this concurring opinion.